**LAW OFFICE OF BENJAMIN J. FUCHS**
Benjamin J. Fuchs (SBN 320793)
ben@bjflegal.com
2323 Broadway
Oakland, CA 94612
Tel: (510) 542-9201

**NIDEL & NACE, P.L.L.C.**
Chris Nidel (*Pro Hac Vice Forthcoming*)
chris@nidellaw.com
April Strauss (SBN 163327)
april@nidellaw.com
One Church Street, Suite 802
Rockville, MD 20850
Tel: (202) 780-5153

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MACY MERRELL, individually, and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>FLORIDA CRYSTALS CORP. and FANJUL CORP.,<br><br>    Defendants. | Case No. 5:25-cv-02264-SVK<br><br>Hon. Susan van Keulen<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS FLORIDA CRYSTALS CORP. AND FANJUL CORP.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Date: September 30, 2025<br>Time: 10:00 A.M.<br>Dept: Courtroom 6, 4th Floor<br><br>Complaint Filed: March 5, 2025<br>First Amended Complaint Filed: June 12, 2025 |

## TABLE OF CONTENTS

STATEMENT OF ISSUES TO BE DECIDED ............................................................... VI

I.    INTRODUCTION ........................................................................................ 1

II.   FACTUAL BACKGROUND .......................................................................... 5

III.  LEGAL STANDARD.................................................................................... 5

IV.   ARGUMENT .............................................................................................. 6

    A.   DEFENDANT MISCONSTRUES—AND ARTIFICIALLY NARROWS—PLAINTIFF'S WELL-PLED ALLEGATION THAT DEFENDANT'S BURN-HARVESTING PRACTICES CONTRIBUTED TO THE LABEL CLAIMS' DECEPTION OF HER AND OTHER REASONABLE CONSUMERS........................................... 6

    B.   PLAINTIFF PLAUSIBLY ALLEGES THAT DEFENDANT'S GLADES FARMS HARM THE PLANET, HARM THE SOIL, AND CONTRIBUTE TO CLIMATE CHANGE .......................................................... 8

        i.    Plaintiff Has Adequately Pled—and Plausibly Alleged—Defendant's Water Impacts...................................................................................................8

        ii.   Plaintiff Plausibly Alleges that Defendant's Farming Operations Harm to the Planet....................................................................................................10

        iii.  Plaintiff Plausibly Alleges that Defendant's Farming Operations Do Not Help Fight Climate Change..............................................................................11

        iv.   Plaintiff Plausibly Alleges that Defendant's Farming Operations Do Not Help Build Healthy Soils................................................................................12

    C.   PLAINTIFF'S ALLEGATIONS, AT MINIMUM, SATISFY THE LENIENT *WILLIAMS* REASONABLE CONSUMER STANDARD APPLICABLE AT THE MOTION TO DISMISS STAGE ................................. 13

i.     It is not impossible that a reasonable consumer would adopt Plaintiff's interpretations of the Challenged Statements……………………………………………………....13

ii.    California federal courts have affirmed that well-pled FAL, CLRA, and UCL allegations premised on companywide misrepresentations may survive pleadings challenges even where the purchased product was not derived from a company's harmful practice………………………………………………………………....18

iii.   Far from non-actionable puffery, the Challenged Statement "Farming to Help Save the Planet" is a textbook example of a presumptively misleading general environmental claim…………………………………………………………………….…20

D.   PLAINTIFF HAS ADEQUATELY PLED HER COMMON LAW CLAIMS ...................................... 21

E.   PLAINTIFF'S EQUITABLE CLAIMS SURVIVE BECAUSE PLAINTIFF HAS PLED SUFFICIENT FACTS SUPPORTING THAT SHE LACKS AN ADEQUATE REMEDY AT LAW .................................... 22

F.   PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF .................................................... 22

G.   SHOULD THE COURT GRANT DEFENDANT'S MOTION, PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND ............................................................................................................................ 23

V.   CONCLUSION ............................................................................................................................ 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF AUTHORITIES**

C<small>ASES</small>

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 4

*Azoulai v. BMW of N. Am. LLC*, 2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) ........................... 20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). ................................................... 4

*Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, (7th Cir. 2020). ............................... 13

*Beltran v. Avon Prods., Inc.*, No. SACV1202502CJCANX, 2012 WL 12303423 (C.D. Cal. Sept. 20, 2012) ...................................................................................... 2, 17, 18

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336 (9th Cir.1996) ..................................... 4

*Cook, Perkiss, & Liehe v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242 (9th Cir. 1990) .............. 19

*Cooper v. Pickett*, 137 F.2d 616 (9th Cir. 1997). ................................................. 5

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) ................................... 21

*Eminence Cap., LLC v. Aspeon, Inc.,* 316 F.3d 1048 (9th Cir. 2003) ................................ 22

*Gagetta v. Walmart, Inc.*, 646 F. Supp. 3d 1164 (N.D. Cal. 2022) .................................. 22

*Herrera v. Estee Lauder Companies, Inc.*, No. SACV1201169CJCANX, 2012 WL 12507876 (C.D. Cal. Sept. 20, 2012) ....................................................................... 17, 18

*In re S.C. Johnson & Son, Inc. Windex Non-Toxic Litig.*, No. 20-CV-03184-HSG, 2021 WL 3191733 (N.D. Cal. July 28, 2021) ............................................................... 13

*Kasky v. Nike, Inc.*, 27 Cal.4th 939 (2002) ...................................................... 16

*Kearney v. Hyundai Motor America*, No. SACV09–1298–JST, 2010 WL 8251077 (C.D. Cal. Dec. 17, 2010); ................................................................................... 20

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) .......................................... 4

*Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496 (2003) ...................................................... 12

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ................................................................ 12

*Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021) ................................................................ 15

*Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074 (9th Cir.1990) .................................. 22

*Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993) ...................................................................... 4, 9

*Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038 (9th Cir. 2008) ...................................... 19, 20

*Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564 (9th Cir. 2017) ............................... 13

*Sanders v. Apple Inc.*, 672 F.Supp. 2d 978 (N.D. Cal. 2009) ....................................................... 21

*Williams v. Gerber Prods.*, 552 F.3d 934 (9th Cir. 2008). .................................................. 5, 12, 13

<u>STATUTES</u>

Fed. R. Civ. P. 9(b) .................................................................................................................. 5, 10

Fed. R. Civ. P. 12(b)(6) ................................................................................................................... 5

7 C.F.R. § 205.200 ......................................................................................................................... 13

7 C.F.R. § 205.203(d) .................................................................................................................... 13

16 C.F.R. § 260 .............................................................................................................................. 14

16 C.F.R. § 260.4 ................................................................................................................ 15, 16, 20

# STATEMENT OF ISSUES TO BE DECIDED[1]

1)        Whether Defendant has carried its burden of showing that this is the rare circumstance where it is *impossible* that reasonable consumers could be misled by Defendant's unsubstantiated general environmental benefit label claims.

2)        Whether Defendant has established that anything consumers would be reasonably expected to discern or infer from the viewing Defendant's unsubstantiated general environmental benefit label claims *in context* renders it impossible that reasonable consumers would be misled.

3)        Whether Defendant has established that Plaintiff's claims for equitable relief should be dismissed.

4)        Whether Defendant has established that Plaintiff is not entitled to injunctive relief.

5)        Whether Plaintiff should be granted leave to amend as to any dismissed claims.

---

[1] Plaintiff here does not include the questions of whether (1) the Court has personal jurisdiction over Defendant Fanjul Corp. or (2) whether Plaintiff can state a claim against Fanjul Corp. because Plaintiff is preparing to move to voluntarily dismiss Fanjul Corp. from this action without prejudice.

1

## I.    **INTRODUCTION**

The Motion of Defendant Florida Crystals Corp. ("Defendant" or "FCC")[2] fails in multiple

regards—both as to the two core arguments that Defendant states "apply across the board" and as

to Defendant's secondary arguments.

First and foremost, Defendant's principal challenge to Plaintiff's statutory and common-

law claims is fatally flawed because it relies on a fundamental misunderstanding of how and why

Defendant's label claims allegedly misled Plaintiff and other reasonable consumers. Contrary to

Defendant's reframing of the First Amended Complaint's plain language, Plaintiff does *not allege*

that Defendant's label deceived her into buying Defendant's consumer sugar products ("Products")

by promising that the products she *purchased* were not sourced from the South Florida cane fields

where Defendant systematically conducts preharvest burns that studies show sicken—and can even

kill—residents of the region. First, Defendant's exclusive focus on Defendant's devastating pre-

harvesting burning practice improperly narrows the scope of the label claims' plain language and

reasonable interpretation. Defendant's front-label marketing claims—that Defendant is "Farming

to Help Save the Planet" through "farms [that] help fight climate change & build healthy" (the

"Challenged Statements")—go beyond the labeled product, amounting to the precise class of

unsubstantiated general environmental benefit claims that the Federal Trade Commission through

its Green Guides has flagged as inherently misleading.

Second, in focusing only on the sourcing of the organic Products Plaintiff purchased,

Defendant seeks to rewrite the heart of Plaintiff's allegations. Plaintiff makes abundantly clear

---

[2] Plaintiff plans to move to voluntarily dismiss Defendant Fanjul Corp. from this matter in the
interest of judicial efficiency. Plaintiff thus does not oppose Defendant's arguments concerning
Fanjul Corp. Plaintiff styles its Opposition to address the arguments of FCC as a singular
Defendant accordingly.

1

throughout her First Amended Complaint that the Challenged Statements mislead her and other "environmentally conscious consumers" into believing that they are buying Products that "support a company that fights climate change . . . and otherwise cares for the natural planet," thus "inducing responsible consumers to pay money to support the very harms they reasonably believe they're combatting."

Thus, even accepting Defendant's unsupported assertion that it green-harvests the roughly 5 percent of its Florida cane fields dedicated to organic cane (while burn-harvesting the other 95 percent) as true, it does nothing to negate Plaintiff's basis for alleging that the label claims are deceptive and misleading due in part to Defendant's ongoing embrace of a destructive practice that the world's three leading sugar-producing nations have seen fit to restrict or ban. The Court should not reward Defendant's disingenuous effort to recast the nature and scope of Plaintiff's allegations to fit their desired framing.

Second, Defendant cannot show—as it must at this stage of litigation—that this is the rare circumstance where it is *impossible* that the Challenged Statements could have misled reasonable consumers into believing they were purchasing Products from a company whose farms "Helped Save the Planet," helped "fight climate change," and helped "build healthy soils." California federal courts have affirmed that consumers may pursue false advertising claims for company-wide misrepresentations even if the product they purchased did not derive from the harmful practices that rendered those company-wide claims false. As the court in one such matter held:

> As consumers have grown more aware of the social, environmental, and political impact of their purchasing decisions, they have tended to look to more factors, including company-wide operations, to inform their consumption choices. Consumers receive this information from a variety of sources, but one of the most direct and important remains the company itself. Companies, realizing this, have tailored their marketing to such consumers. **It should not be unexpected then, that when companies make misrepresentations about their company-**

2

1

**wide operations, they face potential liability in court to consumers who relied on those representations in purchasing their products.**

2

3  *Beltran v. Avon Prods., Inc.*, No. SACV1202502CJCANX, 2012 WL 12303423, at *2–3 (C.D. Cal.

4  Sept. 20, 2012) (emphasis added). Plaintiff has thus pled adequate facts supporting that the

5  Challenged Statements misled—and continue to mislead—her and other reasonable consumers.

6

7        Next, Defendant's contention that reasonable consumers would not interpret the Challenged

8  Statements as Plaintiff alleges when viewed in context is unavailing. Even if interpreted in the light

9  most favorable to Defendant, the purportedly qualifying front- and back-label statements variously

10  convey that the products are farmed using regenerative practices; that regenerative farming "pulls

11  carbon from the air and stores it in the soil"; that the products do not contain genetically modified

12  ingredients; that FCC "build[s] local habitats for pollinators . . . and birds . . . to protect your foods";

13  that FCC's farming practices produce "[h]ealthier soil" without further elaboration; and that the

14  subset of organic products within the eight total FCC products at issue are both "USDA Organic"

15  and "Regenerative Organic Certified." None of these certifications, projects, or claims of soil

16  carbon retention neutralize the substantial impact Defendant's burn harvesting, water pollution, and

17  historical role in freshwater diversion exact on the local air and water as well as on the broader

18  atmosphere as climate change continues to advance. Further, they fail to provide the level of

19  concrete, substantiating detail required to rescue the Challenged Statements from a finding that they

20  qualify as presumptively misleading effect general environmental claims. But more to the point,

21  none of these non-challenged label elements and statements render it *impossible* that reasonable

22  consumers would be deceived by the Challenged Statements—the high bar Defendant must satisfy

23  to trigger the rare circumstance in which the Court would answer this fact-intensive question itself

24  at the motion to dismiss stage.

25

26

27

28

The reality is as Plaintiff has alleged in detail through the First Amended Complaint: Defendant, well aware of the profitability of appealing to consumers who increasingly consider the environmental impacts of their purchasing decisions, has positioned itself through its marketing "as the country's most environmentally conscious and climate-friendly sugar company." A key component of this campaign is Defendant's appeal to consumers through the promised general environmental benefits of the Challenged Statements, placed prominently on the Products' green front labels. Plaintiff has adequately pled that she and other reasonable consumers interpret these general environmental claims to mean that Defendant's farms generally help save the planet, fight climate change, and build healthy soil. And Plaintiff has also pled with sufficient detail that these claims are all deceptive and misleading to her and other reasonable consumers because Defendant's Glades operations release significant greenhouse gases and airborne toxins while polluting and diverting South Florida waters—consequences directly contrary to the label claims made.

Defendant's Motion fails in other regards. By noting FCC's role as one of the two largest landholders in the Everglades Agricultural Area, which blocks the region's natural southward flow of surface waters, as well as its historical use of fertilizers that have for decades contributed to regional water quality issues, Plaintiff has sufficiently pled Defendant's impacts on South Florida's freshwater quality, supply and flow. Additionally, Plaintiff has pled adequate facts supporting her equitable claims under the UCL and CLRA because she lacks an adequate remedy at law. Further, Plaintiff has sufficiently alleged that she has Article III standing for request for injunctive relief in asserting her desire to purchase FCC's products again in the future without the specter of being deceived.

For these reasons, the Court should deny Defendant's Motion as to the components Plaintiff opposes. Alternatively, to the extent the Court grants the Motion in whole or in part as to the opposed arguments, the Court should do so with leave to amend.

4

## II.    FACTUAL BACKGROUND

Plaintiff purchased Defendant's Organic Raw Cane Sugar Product in Santa Cruz, Calif. on several occasions between approximately September 2021 and August 2024. FAC ¶ 29. In doing so, she relied on the Products' Challenged Statements for their promise that purchasing the Products would support a company whose operations helped "save the planet," helped "fight climate change," and helped "build healthy soils." FAC ¶ 29. Plaintiff subsequently learned that Defendant delivered none of these promised benefits due to its practices, described herein, which in fact harm the planet, contribute to climate change, and do not help build healthy soils. FAC, *passim*.

## III.    LEGAL STANDARD

In a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept all allegations as true and view them favorably to the plaintiffs, with dismissal only warranted upon a finding that no plausible claim exists. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir.1996); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Claims that "sound in fraud" are subject to a heightened pleading standard under Federal Rule of Civil Procedure 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citation omitted). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under this standard, allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (quotation omitted). That is, a plaintiff must identify "the who, what, when, where, and how" of the alleged conduct sounding in fraud. *Cooper v. Pickett*, 137 F.2d 616, 627 (9th Cir. 1997).

1  However, whether a practice is deceptive is a factual issue inappropriate for dismissal. *Williams v.*

2  *Gerber Prods.*, 552 F.3d 934, 938-39 (9th Cir. 2008).

3  ## IV.    ARGUMENT

4  **a.  Defendant Misconstrues—and Artificially Narrows—Plaintiff's Well-Pled Allegation
     that Defendant's Burn-Harvesting Practices Contributed to the Label Claims'
5  Deception of Her and Other Reasonable Consumers**

6

7  Defendant asserts that "Plaintiff's primary claim is that the Challenged Statements are

8  misleading because Florida Crystals uses preharvest burning to produce sugar products." Motion

9  at 11 (citing FAC ¶¶ 1, 8). But Defendant goes on to argue that this claim "has a fatal flaw" in that

10  since "the sole Product that Plaintiff alleges she purchased is certified USDA Organic," and "the

11  NOP prohibits the use of preharvest burning of USDA Organic products,"[3] "Plaintiff cannot show

12  that the Challenged Statements on the Product she purchased misled her about the use of preharvest

13  burning because *there was no burning used in the production of the Product*." Dkt. 41 (Defendant's

14  Motion for Summary Judgment ("Motion")) at 11-12. Defendant contends that "[t]his alone is fatal

15  to [Plaintiff's] claims premised on Defendants' alleged use of preharvest burning." Motion at 12.

16

17  Defendant here fundamentally mischaracterizes Plaintiff's interpretation of the Challenged

18  Statements. None of the Challenged Statements specify that they refer only to a specific plot of

19  FCC's EAA cane fields—or limits the claim to organic or conventional—nor does any

20  unchallenged text or other component of the Products' front or back labels convey this limitation

21  to consumers. In fact, the Challenged Statements convey the opposite, referring to Defendant's

22

23

24

---

25  [3] While not central to Plaintiff's basis for alleging the Challenged Statements deceived her and
     other reasonable consumers, Defendant's assertion that none of the organic Products contain
26  sugar sourced from burn-harvested cane fields should not be assumed to be true based solely on
     Defendant's Motion statements. While Plaintiff does not assert that this is false, Plaintiff notes
27  that Defendant does not support its assertion with affidavits, third-party certification records, or
     other corroborating documentation.

28

"Farming" and "farms" writ large in identical phrasing across all eight organic and conventional Products.

Defendant points to nothing in the FAC where Plaintiff claims that her deception was limited to *the sourcing of the Product she purchased*. This is because Plaintiff's allegations of deception are not so limited and apply more broadly to Defendant's conduct. Plaintiff reasonably interpreted Defendant's broad environmental label claims to mean what they plainly convey: that Defendant was "Farming to Help Save the Planet," using "farms" that "help fight climate change & build healthy soils." Plaintiff articulates her grounds for the Challenged Statements' deceptive effects throughout her First Amended Complaint, noting, for example, that "Defendants have comprehensively branded Florida Crystals and its sugar products as *the* eco-friendly sugar option in the United States, intentionally appealing to the millions of American sugar consumers who care about how their shopping habits impact the environment and climate change" and that "[c]onsumers are being deceived" because "Defendants' harmful practice of burning sugarcane before harvest does not "Help Save the Planet," "help fight climate change," or help "build healthy soils." FAC ¶¶ 7-8.

As Plaintiff alleges, "Defendants have capitalized on the growing demand for products that consumers believe help—or do not worsen—climate change as well as localized environmental harm by building the entire Florida Crystals brand identity around its claimed environmentalism, doubling down twice in the last four years with label redesigns accompanied by press releases that falsely position Florida Crystals sugar products as a vehicle for environmentally conscious consumers to support a company that fights climate change (by ensuring a net-neutral or better greenhouse gas footprint) and otherwise cares for the natural planet." FAC ¶ 23. "Through this deception," Plaintiff's allegations continue, "Defendants undermine consumer trust, impede

informed purchase decisions, and put health at risk—all the while inducing responsible consumers to pay money to support the very harms they reasonably believe they're combatting." *Id.* That is, Plaintiff and other consumers are fraudulently induced—based directly on statements made on the Products' labels—to buy the Products on the belief that their "purchase will support a company that cares first and foremost about environmental stewardship and fighting climate change." FAC ¶ 79. *This*—not Defendant's narrowed recasting—is Plaintiff's true basis for alleging deception and the violations of law that flow therefrom. *See* FAC ¶ 151 (alleging Defendant violated the UCL by deceiving members of the California Subclass into paying premiums—or at all—for Products that are "beneficial to the planet and produced and sold by a company whose farming helps fight climate change and build healthy soils").

The Court should thus reject Defendant's attempt to narrow Plaintiff's alleged basis for deception and use this mischaracterization as the basis for dismissal. Plaintiff's actual theory is plainly stated in the FAC and provides ample basis for denying dismissal, particularly at this stage of litigation.

**b.  Plaintiff Plausibly Alleges that Defendant's Glades Farms Harm the Planet, Harm the Soil, and Contribute to Climate Change**

Plaintiff plausibly alleges facts that, taken as true as they must be at this stage, undermine the veracity of all three Challenged Statements.

i.    Plaintiff Has Adequately Pled—and Plausibly Alleged—Defendant's Water Impacts

First, Defendant contends that as to Plaintiff's "claims premised on water pollution, Plaintiff alleges no facts tying her generalized criticisms of "Big Sugar" to Florida Crystals, much less the Product she purchased," and "utterly fails to connect any of those allegations to Florida Crystals' production practices, much less the practices used to produce the specific USDA Organic product she purchased." Motion at 11, 14.

8

1    Not so. First, Florida's "Big Sugar" is not, as Defendant suggests, an ill-defined

2    "amorphous" entity. Motion at 13. Plaintiff defines "Big Sugar" clearly in her FAC as comprising

3    Defendant along with U.S. Sugar Corporation—i.e., the "second head of Florida's sugar lobby."

4    FAC ¶¶ 5, 44. The media sources Plaintiff cites reflect the same definition. *See, e.g.,* FAC ¶ 67, n.

5    51 (Tim Padgett, *'Not Even Close': Clean-Up of Everglades Water Polluted by Big Sugar Struggles*

6    *to Keep Up*, WLRN PUBLIC MEDIA (Dec. 6, 2023) https://www.wlrn.org/environment/2023-12-

7    06/everglades-restoration-sugar-farms-phosphorous-water (defining Big Sugar as "the politically

8    powerful industry led by U.S. Sugar and Florida Crystals" and noting how "Florida's Big Sugar

9
10    barons, such as Alfonso Fanjul, whose family owns Florida Crystals, have for decades resisted state

11    and federal efforts to cede the land necessary for vital water storage and clean-up," stalling "overall

12    Everglades restoration" efforts)).

13    Plaintiff also describes Defendant's alleged water impacts in sufficient detail in her FAC.

14
15    For example, Plaintiff describes Florida Crystals' significant historic role (alongside U.S. Sugar)

16    introducing eutrophic fertilizers into local waterways, contributing to "deadly algal blooms" and

17    "promoting the aggressive growth of aquatic species like cattails to the detriment of other species"

18    while "depriving estuarial habitats such as Biscayne Bay of essential flushes of clean freshwater."

19    FAC ¶ 67. Further, as to water diversion impacts, Plaintiff details—and supports with cites to news

20    articles— how Defendant's sugar fields occupy close to *half* of the EAA's approximately 400,000

21    acres of sugarcane farms that occupy a critical geographic point where the "River of Grass"

22
23    historically flowed south toward the Everglades. FAC ¶¶ 40-41, 57, 68.[4] Plaintiff further notes that

24
25    [4] *Citing* Amy Green, *Billions of Gallons of Freshwater Are Dumped at Florida's Coasts.*
     *Environmentalists Want That Water in the Everglades*, INSIDE CLIMATE NEWS (June 18,
26    2024) https://insideclimatenews.org/news/18062024/everglades-wetlands-toxic-algae-pollution/
     (detailing Big Sugar's dominant role in EAA's blockage of natural southward water flow through
27    "River of Grass" into heart of surviving portion of Everglades along with correlated redirection of
     now-polluted water flow to Lake Okeechobee and outflow waterways to ocean).

28

Defendant is currently seeking to build a limestone rock mine in the region despite concerns that the project could "cripple future Everglades restoration projects." FAC ¶ 69.[5]

Plaintiff's FAC allegations concerning the impacts of Defendant's sugar-field presence and practices on the region's water quality, flow, and supply therefore "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). That is, they articulate in sufficient detail Defendant's alleged conduct that, through its harm to water quality and natural waterflow, help render the Challenged Statements misleading to Plaintiff and other reasonable consumers. *See Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (quotation omitted) (to satisfy Rule 9(b), fraud-related allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong").

ii.    <u>Plaintiff Plausibly Alleges that Defendant's Farming Operations Harm to the Planet</u>

Next, Plaintiff through her FAC alleges detailed facts that, taken to be true as they must, support that Defendant's farms, far from "Farming to Help Save the Planet," as a whole *harm* the planet in multiple ways. These include through the emission of airborne toxins and greenhouse gases on regular basis during the burn season through its preharvest burns, by damaging the soil through these burns, and through its water impacts. For example, Plaintiff alleges in detail—and supports with reference to numerous scientific and medical studies—how Defendant's burn-harvesting practices release copious volumes of carbon dioxide, methane, nitrogen, volatile organic compounds, and a host of chemicals (including PM2.5) on a daily basis throughout the burn season,

---

[5] *Citing* Timothy O'Hara, *Palm Beach County approves sugar rock mine in Everglades despite Treasure Coast opposition*, TREASURE COAST NEWS (May 22, 2025), https://www.tcpalm.com/story/news/local/indian-river-lagoon/2025/05/22/palm-beach-county-commission-to-vote-on-florida-crystals-sugar-rock-mine-in-everglades/83771283007/).

1    polluting the atmosphere and sickening residents of the Glades region. FAC ¶ 47.[6] Defendant does

2    not dispute these assertions as to the misleading nature of the Challenged Statement "Farming to

3    Help Save the Planet," sidestepping their deceit by contending that the claim "is nonactionable

4    puffery" (addressed below). Motion at 20.

5        iii.    Plaintiff Plausibly Alleges that Defendant's Farming Operations Do Not Help Fight
                  Climate Change

6            Plaintiff also pleads sufficient facts supporting that Defendant's EAA farming operations

7    do not, in fact, help "fight climate change." Indeed, Plaintiff through her FAC goes beyond what is

8    required to establish the Challenged Statement's falsity and cites extensive scientific studies

9    supporting that Defendant's Glades sugar farming practices in fact *contribute* to climate change—

10   noting, for example, that "studies support that "the most important reduction in greenhouse gas

11   emissions from sugarcane areas could be achieved by switching" from a burn-harvesting system to

12   a green harvest system, as such a transition can, e.g., allow sugar growers to sequester more than

13   *seven tons* of carbon dioxide equivalent per hectare every year." FAC ¶ 52 (citing Eduardo Barretto

14   de Figueiredo et al., *Greenhouse Gas Emission Associated with Sugar Production in Southern

15   Brazil*,        5        CARBON        BALANCE        MGMT.        (2010),

16   https://cbmjournal.biomedcentral.com/articles/10.1186/1750-0680-5-3).        Defendant    does    not

17   confront Plaintiff's assertions that Defendant's farming practices do not help fight climate change,

18   instead focusing primarily on the contention that this Challenged Statement does not promise "a

19   *net reduction* in greenhouse gases" and arguing that "Plaintiff cannot base claims on statements the

---

[6] *Citing* Elena David & Violeta-Carolina Niculescu, *Volatile Organic Compounds (VOCs) as Environmental Pollutants: Occurrence and Mitigation Using Nanomaterials*, 18 INT. J. ENV'T. RES. PUBLIC HEALTH 13147 (2021), https://pmc.ncbi.nlm.nih.gov/articles/PMC8700805/. 21 Lulu Ramadan et al., *supra* n. 16; *see also* Violeta Mugica-Alvarez et al., *Sugarcane Burning Emissions: Characterization and Emission Factors*, 193 ATMOSPHERIC ENV'T 262-72 (2018), https://www.sciencedirect.com/science/article/abs/pii/S1352231018305995

11

label does not make." Motion at 17. Plaintiff addresses below whether a jury may find Plaintiff's interpretation of this Challenged Statement reasonable.

    iv.    <u>Plaintiff Plausibly Alleges that Defendant's Farming Operations Do Not Help Build Healthy Soils</u>

Finally, Plaintiff also alleges detailed facts supporting that Defendant's EAA operations do not as a whole help "build healthy soil." Plaintiff supports her allegations that FCC's ongoing use of burn harvesting in fact *harms* soil health by citing studies showing, for example, that "burned sugarcane fields subsequently release approximately 37 percent more soil bound carbon dioxide than non-burned (green-harvested) fields—due in large part to the lack of residual organic matter and the destabilization of soil in these intensively burned fields." FAC ¶ 51.[7] Defendant does not attempt to confront Plaintiff's factual assertions as to the harmful impact of preharvest burns on soil health, instead arguing that reasonable consumers would note the Products' unchallenged label claims and marks and "understand that the Product . . . builds healthy soil *because* it was produced using USDA Organic and Regenerative Organic practices and made from non-GMO sugarcane." Motion at 19. Defendant once again imposes its own artificial narrowing of Plaintiff's allegations of deception, focusing on FCC's small minority of organic farmland to note that "any production practice used under the NOP "must maintain or improve the natural resources of the operation,

---

[7] *Citing* Mara Regina Moitinho et al., *Effects of Burned and Unburned Sugarcane Harvesting Systems on Soil CO2 Emission and Soil Physical, Chemical, and Microbiological Attributes*, 196 CATENA 104902 (2021), https://www.sciencedirect.com/science/article/abs/pii/S0341816220304537 (finding faster soil carbon emission rates ($2.63 \ \mu mol \ m^{-2} \ s^{-1}$ versus $1.92 \ \mu mol \ m^{-2} \ s^{-1}$) and shorter oil-carbon half-lives (1,033.95 days versus 1,572.82 days) in burned areas than in unburned areas); *see also* Rose Luiza Moraes Tavares et al., *Soil Management of Sugarcane Fields Affecting CO2 Fluxes*, 73 SCIENTIA AGRICOLA 543-51 (2016), https://www.researchgate.net/publication/309407458_Soil_management_of_sugarcane_fields_affecting_CO2_fluxes; Alan Rodrigo Panosso et al., *Spatial and Temporal Variability of Soil CO2 Emission in a Sugarcane Area under Green and Slash-and-Burn Managements*, 105 SOIL AND TILLA

including soil and water quality," and that "the NOP regulates the types of substances that organic producers may use and requires organic producers to manage nutrients and soil amendment systems to "maintain or improve soil organic matter content in a manner that does not contribute to contamination of crops, soil, or water." Motion at 5 (*citing* 7 C.F.R. §§ 205.200, 205.203(d)). None of this undermines Plaintiff's well-pled allegations that Defendant's farming practices generally harm soil rather than help build healthy soil—and to the extent they might, this would present a factual dispute that cannot be decided at the motion to dismiss stage. *See, e.g., Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (Rule 12(b)(6) review limited to the four corners of the complaint, with allegations taken as true and construed in plaintiff's favor).

Plaintiff has thus pled—and supported with substantial citations to reliable sources— sufficient facts addressing the factual shortcomings of all three Challenged Statements.

### c. Plaintiff's Allegations, at Minimum, Satisfy the Lenient *Williams* Reasonable Consumer Standard Applicable at the Motion to Dismiss Stage

i.   It is not impossible that a reasonable consumer would adopt Plaintiff's interpretations of the Challenged Statements.

All three of Plaintiff's statutory claims are governed by the "reasonable consumer" test. *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citations omitted). Under the reasonable consumer test, a plaintiff must show that "members of the public are likely to be deceived." *Id.* (citation omitted). To make such a showing, a plaintiff must establish that it is "probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 508, 129 Cal.Rptr.2d 486 (2003) (noting that this requires "more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner").

13

1

2

3

4

5

6

7

8

9

10

11

        Generally, "the question of whether a business practice is deceptive is a question of fact that is appropriate for resolution on a motion to dismiss *only in "rare" circumstances.*" *See Williams*, 552 F.3d at 938–39 (emphasis added); *see also Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 566 (9th Cir. 2017) (whether a business practice is deceptive is generally "not appropriate for decision on a motion to dismiss") (*citing Williams*). That is, "[h]ow reasonable consumers actually understand defendants' . . . labels is a question of fact that cannot be resolved on the pleadings" even if it is sometimes amenable to resolution on summary judgment." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 483 (7th Cir. 2020). Such "rare" circumstances occur when "the advertisement itself [makes] it *impossible* for the plaintiff to prove that a reasonable consumer [is] likely to be deceived." *Williams*, 552 F.3d at 939.

12

13

14

15

16

17

18

19

20

21

        Thus, under the deferential *Williams* standard at the pleadings challenge stage of litigation, Plaintiff need only establish that her interpretations of the Challenged Statements are *plausible. See In re S.C. Johnson & Son, Inc. Windex Non-Toxic Litig.*, No. 20-CV-03184-HSG, 2021 WL 3191733, at *9 (N.D. Cal. July 28, 2021) ("At this stage, the Court need not decide which party offers the better, more reasonable or more persuasive definition"). Plaintiff's interpretations of the Challenged Statements, as alleged in the FAC and reiterated herein, satisfy this modest requirement, as Plaintiff through her FAC has supplied "sufficient support . . . to support an inference that a reasonable consumer would adopt" her interpretation of Defendant's label claims. *See id.*

22

23

24

25

26

27

        In its Motion, Defendant dismisses Plaintiff's interpretation of the Challenged Statement "farms help fight climate change" as having conveyed Defendant's promise of "a net reduction in the greenhouse gases that cause climate change," arguing that "Plaintiff cannot base claims on statements the label does not make." Motion at 17 (*citing* FAC ¶ 19). Again, Defendant imposes its own narrowing, limiting the Court's focus and ignoring the critical fact that this Challenged

28

14

Statement constitutes an unqualified general environmental benefit claim, promising the precise sort of "far-reaching environmental benefits" the FTC Green Guides warn against using due to their propensity to confuse or mislead consumers. *See* 16 C.F.R. §§ 260, 260.4 (stating that "[b]ecause it is highly unlikely that marketers can substantiate all reasonable interpretations of these claims, marketers should not make unqualified general environmental benefit claims). The distance between the Parties' asserted interpretations of the Challenged Statement "farms help fight climate change" only underscores that the claim amounts to a general environmental benefit claim that is "difficult to interpret and likely convey[s] a wide range of meanings" (*see* 16 C.F.R. § 260.): Plaintiff interprets the claim to mean Defendant combats climate change through a net-neutral or better greenhouse gas footprint (FAC ¶ 23), while Defendant asserts the same claim tells reasonable consumers "that the Product is made from farms that "help fight climate change" . . . because they are Regenerative Organic Certified®, Non-GMO Project Verified, and USDA Organic" (Motion at 16).

As Plaintiff alleges in the FAC, the Challenged Statement "help fight climate change" is analogous to the phrase "Eco-Friendly," which the Green Guides state "is deceptive" because "it is highly unlikely that [a] marketer can substantiate" such broad environmental benefit claims. FAC ¶¶ 76-77 (*citing* 16 C.F.R. § 260.4). Finally, even if, *arguendo*, Defendant were ultimately capable of substantiating that its farms do in fact "help fight climate change," it would have to demonstrate that this benefit is more than negligible. *Id*. (marketers "should not make unqualified environmental benefit claims" and "should not imply that any specific benefit is significant when it is, in fact, negligible"). No matter here as Defendant does not provide substantiation of the Challenged Statement "help fight climate change" anywhere on its Product labels.

1    The Ninth Circuit has held that "deceptive advertising claims should take into account all

2    the information available to consumers and the context in which" information relating to the

3    subject claim "is provided and used," with "availability" defined as the text of product labels as

4    well as "contextual inferences from the product itself and its packaging." *Moore v. Trader Joe's*

5    *Co.*, 4 F.4th 874, 883 (9th Cir. 2021). In *Moore*, the Court pointed to three "contextual

6    inferences" in holding that a reasonable consumer would not interpret a claim that a honey

7    product was composed entirely from the Manuka flower since such would be impossible. By

8    contrast, nothing in Defendant's Product labeling would alter a consumer's reasonable belief that

9    "help fight climate change" means Defendant's farms help combat climate change. Plaintiff is

10   unclear as to how, as Defendant asserts, Product label statements and marks connoting that

11   Defendant's organic farms "help fight climate change" through being "Regenerative Organic

12   Certified®, Non-GMO Project Verified, and USDA Organic" might somehow disabuse a

13   reasonable consumer of average sophistication of the impression that the Challenged Statement

14   promises a broader benefit or even clear up the ambiguity created by this front-label general

15   environmental benefit claim.

16        Plaintiff's interpretations of the other two Challenged Statements likewise qualify as

17   reasonable. First, as Plaintiff alleges, "Farming to Help Save the Planet" amounts to a textbook

18   general environmental benefit claim, analogous to "Eco-Friendly." *See* FAC ¶¶ 76-77, *citing* 16

19   C.F.R. § 260.4. Nothing on the Products' packaging or otherwise readily apparent to any

20   reasonable consumer provides a concrete definition of this claim that might render Plaintiff's

21   interpretation impossible, unlike the "contextual inferences" the *Moore* Court concluded should

22   have put the plaintiff on notice that their interpretation of the label claim was "impossible."

23   *Moore v. Trader Joe's Co.*, 4 F.4th at 883.

1    Next, Plaintiff's asserted interpretation of the Challenged Statement "build healthy soil" is

2    reasonable—but more to the point for purposes of this Motion, *it is certainly not impossible. See*

3    *Williams*, 552 F.3d at 939. As with the honey product's label claim in *Moore,* "build healthy soil"

4    is ambiguous and subject to multiple meanings. Also similar to the facts in *Moore* is that the

5    Products contain non-challenged statements and marks ("Regenerative Organic Certified®,"

6    "Non-GMO Project Verified," and "USDA Organic") that *may*, as Defendant contends, speak

7    further to the meaning of "build healthy soil." Motion at 16. The comparison with *Moore* ends

8    there. Unlike the Ninth Circuit's finding that the plaintiff's interpretation of the honey label claim

9    was rendered "impossible" by "contextual inferences," no such dispositive "inferences" exist

10   here. Rather, "build healthy soils" is a much broader claim than the "100% New Zealand Manuka

11   Honey" and "New Zealand Manuka Honey" label claims in *Moore*, which facially appeared to

12   present consumers with, at most, three possible interpretations—all well-defined. 4 F.4th 874, 882

13   (noting that absent the "clarifying inferences," "100% could be a claim that the product was

14   100% Manuka honey, that its contents were 100% derived from the Manuka flower, or even that

15   100% of the honey was from New Zealand"). No such limitations exist as to "help build healthy

16

17   soil" on account of its breadth and vagueness, nor do any of the Product statements render

18   Plaintiff's interpretation impossible.

19

20       Finally, to Defendant's assertions that the Challenged Statements "help fight climate

21   change" and "build healthy soils" are both true, with their meanings clarified and substantiated by

22   the non-challenged label statements and marks communicating the Products' organic and GMO

23   certifications, this would not eliminate the possibility that a jury would find them to be

24   technically true but misleading, with Plaintiff's interpretations found reasonable as a result. *See*

25   *Williams*, 552 F.3d at 938 (affirming that true statements can mislead); *see also Kasky v. Nike,*

26   *Inc.*, 27 Cal.4th 939, 951 (2002) (The California consumer protection laws "prohibit not only

27

28

17

advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public").

    ii.    <u>California federal courts have affirmed that well-pled FAL, CLRA, and UCL allegations premised on companywide misrepresentations may survive pleadings challenges even where the purchased product was not derived from a company's harmful practices.</u>

    Further supporting that Defendant cannot carry its imposing burden of demonstrating that it is *impossible* that reasonable consumers would be misled by the Challenged Statements is the fact that courts have held that well-pled allegations of deception based on companywide misrepresentations may withstanding a motion to dismiss even where the purchased product is not sourced from the practice that renders the company's marketing claims false or misleading.

    In the companion cases *Beltran v. Avon Prods., Inc.* and *Herrera v. Estee Lauder Companies, Inc.*, consumers alleged they were misled by cosmetic manufacturers' claims that they did not test their products on animals when in reality the defendants conducted animal testing with products sold in foreign markets, including in countries where they were required to do by law. *Beltran v. Avon Prods., Inc.*, No. SACV1202502CJCANX, 2012 WL 12303423, at *2–3 (C.D. Cal. Sept. 20, 2012); *Herrera v. Estee Lauder Companies, Inc.*, No. SACV1201169CJCANX, 2012 WL 12507876, at *1 (C.D. Cal. Sept. 20, 2012). In each of those cases, the courts found that the plaintiffs had Article III standing to pursue claims (including FAL, CRLA, and UCL claims) grounded in the respective defendants' "false representations and omissions about its overseas operations," which allegedly induced the plaintiffs to purchase products in the United States they otherwise would not have purchased. *Beltran*, 2012 WL 12303423, at *4.

    Each of these cases emphasized the following:

1

2

3

4

5

6

7

8

> That the misrepresentations were not specifically related to the products she purchased, but instead the company's wider operations, does not negate the fact that Ms. Beltran was allegedly induced into purchasing something she otherwise would not have purchased. Consumers typically base their purchasing decisions on the price and quality of a product. As consumers have grown more aware of the social, environmental, and political impact of their purchasing decisions, they have tended to look to more factors, including company-wide operations, to inform their consumption choices. Consumers receive this information from a variety of sources, but one of the most direct and important remains the company itself. Companies, realizing this, have tailored their marketing to such consumers. It should not be unexpected then, that when companies make misrepresentations about their company-wide operations, they face potential liability in court to consumers who relied on those representations in purchasing their products.

9

10

11

*Beltran,* 2012 WL 12303423, at *2–3; *Herrera v. Estee Lauder Companies, Inc.*, 2012 WL 12507876, at *3.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

    The allegations and analyses facts in *Beltran* and *Herrera* are directly applicable here, where Plaintiff alleges Defendant deceived her and other consumers through front-label general environmental benefit claims that misrepresented Defendant's company-wide environmental impacts—and the broad benefits of supporting a company that is helping "Save the Planet," "fight climate change," and "build healthy soils" that are untethered to the specific products purchased. And Plaintiff has not, as the plaintiffs in *Herrera* and *Beltran*, inadequately pled key components of her causes of action by failing to identify (a) "what the advertising materials specifically state" or (b) "point[s] . . . to particular advertisements or promotional materials that she was personally exposed to." *See, e.g.*, *Beltran*, 2012 WL 12303423, at *4. (noting that the plaintiff there had "not even [pled] whether the advertisements were broadcast on television, on the radio, or in print ads). Rather, Plaintiff alleges that she relied on the three identified Challenged Statements, described verbatim through the First Amended Complaint and captured in included images— when purchasing the Products. FAC ¶ 19.

27

28

1    For these reasons, Plaintiff's interpretations of all three Challenged Statements are, at

2    minimum, not impossible—and thus they satisfy the modest *Williams* reasonable consumer

3    standard at this stage of litigation in that they are not "impossible" interpretations assuming the

4    Court analyzes them according to Plaintiff's theory of deception rather than Defendant's

5    improperly narrowed redrawing of Plaintiff's own allegations. And for the reasons stated *supra*,

6    Plaintiff has alleged sufficient facts to support that each of the Challenged Statements as

7    reasonably interpreted were deceptive or misleading due to their overstatement of the general

8    environmental benefits they each promised.

9

10    iii.    <u>Far from non-actionable puffery, the Challenged Statement "Farming to Help Save the
         Planet" is a textbook example of a presumptively misleading general environmental
         claim.</u>

11

12    Defendant's argument that the Challenged Statement "Farming to Help Save the Planet" is

13    mere "puffery" fails, as this Challenged Statement fits squarely within the Green Guides' definition

14    of inherently misleading general environmental benefit claims.

15

16    "A statement is considered puffery if the claim is extremely unlikely to induce consumer

17    reliance. Ultimately, the difference between a statement of fact and mere puffery rests in the

18    specificity or generality of the claim." *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1053

19    (9th Cir. 2008) (*citing Cook, Perkiss, & Liehe v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 245

20    (9th Cir. 1990)). However, even statements constituting puffery on their own cannot be dismissed

21    when they contribute to the deceptive context as a whole. *See Williams*, 552 F.3d at 939 n. 3.

22

23    Here, the Challenged Statement "Farming to Help Save the Planet," while certainly broad,

24    qualifies as just the sort of promise of "far-reaching environmental benefits" the FTC Green Guides

25    warn against using due to their propensity to confuse or mislead consumers. *See* 16 C.F.R. §§ 260,

26    260.4 (stating that "[b]ecause it is highly unlikely that marketers can substantiate all reasonable

27

28                                                     20

interpretations of these claims, marketers should not make unqualified general environmental benefit claims). Indeed, the Challenged Statement "Farming to Help Save the Planet" is analogous to the phrase "Eco-Friendly," which the Green Guides state "is deceptive" because "it is highly unlikely that [a] marketer can substantiate" such broad environmental benefit claims. FAC ¶¶ 76-77 (*citing* 16 C.F.R. § 260.4). The claim thus does not meet the definition of puffery, as the FTC has effectively opined that it is *the opposite* of "extremely unlikely to induce consumer reliance." *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008)

### d.    Plaintiff Has Adequately Pled Her Common Law Claims

The Court should deny Defendant's motion to dismiss Plaintiff's breach of warranty and unjust enrichment claims because, as discussed above, Plaintiff has adequately pled that Defendant's Challenged Statement misled and continue to mislead Plaintiff and other reasonable consumers.

As to breach of warranty, Plaintiff has alleged that she purchased the Products in reasonable reliance on Defendant's Challenged Statements, which misrepresented the Products as derived from farms that "Help Save the Planet," "fight climate change," and "build healthy soils." Plaintiff thus alleged in sufficient detail the "terms of the warranty," her "reasonable reliance thereon," the breach of those terms, and how this breach proximately caused Plaintiff's injury. *See Kearney v. Hyundai Motor America*, No. SACV09–1298–JST, 2010 WL 8251077, at *7 (C.D. Cal. Dec. 17, 2010); *see also Azoulai v. BMW of N. Am. LLC*, 2017 WL 1354781, at *7 (N.D. Cal. Apr. 13, 2017) (breach of express warranty claims require showing that claims at issue are likely to deceive reasonable consumers).

Further, Plaintiff has adequately pled unjust enrichment on the same basis she adequately alleged her statutory causes of action, as discussed in detail above. *See Sanders v. Apple Inc.*, 672

21

1    F.Supp. 2d 978, 989 (N.D. Cal. 2009) (an unjust enrichment claim depends on the viability of the

2    plaintiff's other claims).

3        **e.    Plaintiff's Equitable Claims Survive because Plaintiff has Pled Sufficient Facts
4               Supporting that She Lacks an Adequate Remedy at Law**

5        Plaintiff's equitable claims survive at this stage in the litigation because Plaintiff has

6    sufficiently alleged that she lacks an adequate remedy at law. As Plaintiff details in her FAC, she

7    possesses an intent to purchase the Products in the future but lacks the ability to ascertain whether

8    their label claims remain false, deceptive, or misleading. FAC ¶ 29. Thus, even if Plaintiff were to

9    secure money damages, this would be inadequate to remedy the harm since she would remain

10   susceptible to future injury through a future purchase of Products that carry misleading or

11   deceptive label claims. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir.

12   2018)) (recognizing the risk of injury to consumers through future purchases).

13

14       **f.    Plaintiff Has Standing to Seek Injunctive Relief**

15       Next, Plaintiff has Article III standing to seek injunctive relief. Defendant's argument

16   should be rejected because it misconstrues the interplay between controlling Ninth Circuit

17   precedent and the FAC's detailed allegations.

18

19       As Defendant correctly notes, under *Davidson v. Kimberly-Clark Corp.*, previously

20   deceived consumers have standing to seek injunctive relief if they face an "actual or imminent"

21   threat of future harm. 873 F.3d 1103, 1115 (9th Cir. 2017). This standard applies in situations

22   such as that before the Court where consumers plausibly allege they cannot rely on the accuracy

23   of the product labeling for future purchases. Specifically, Plaintiff in the FAC asserts that she

24   intends to repurchase the Products but currently cannot trust that their label claims are not

25   deceptive or misleading. FAC ¶ 29.

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Since Plaintiff would again purchase the Products were they accurately labeled (FAC ¶ 29) but cannot independently verify whether Defendant continues to engage in the subject environmentally harmful practices that render the Challenged Statements deceptive and misleading, she is at risk of either avoiding Products she would otherwise purchase if Defendant's farms actually helped save the planet, helped fight climate change, or helped build healthy soils. Plaintiff's well-pled inability to make an informed decision on these bases is the precise type of imminent and concrete harm that injunctive relief is meant to address. *See, e.g.*, *Gagetta v. Walmart, Inc.*, 646 F. Supp. 3d 1164, 1177 (N.D. Cal. 2022) (plaintiffs allegedly prevented from purchasing products in future due to unreliable labels had standing).

Plaintiff therefore has Article III standing to pursue injunctive relief since she has adequately alleged that she faces an "actual or imminent" threat of future harm.

**g.   Should the Court Grant Defendant's Motion, Plaintiff Should be Granted Leave to Amend**

Lastly, to the extent the Court grants Defendant's Motion in whole or in part, the Court should do so with leave to amend. The Ninth Circuit applies a policy of "extreme liberality" when considering whether to grant leave to amend. *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990). Dismissal with prejudice and without leave to amend is not appropriate unless the complaint could not be saved by amendment. *See Eminence Cap., LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003)**.** Plaintiff should thus be afforded the opportunity to cure any identified pleading defects should the Court grant Defendant's Motion in any part.

**V.      CONCLUSION**

Plaintiff respectfully requests that the Court deny Defendant's Motion in its entirety. To the extent the Court grants the Motion in whole or in part, Plaintiff requests leave to amend.

Dated: August 7, 2025                        Respectfully submitted,

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Ben Fuchs*
Benjamin J. Fuchs, Esq.
**LAW OFFICE OF BENJAMIN J. FUCHS**

Chris Nidel, Esq. (*Pro Hac Vice Forthcoming*)
April Strauss, Esq.
**NIDEL & NACE, P.L.L.C.**

*Attorneys for Plaintiff*

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO.: 5:25-CV-02264-SVK