**LAW OFFICE OF BENJAMIN J. FUCHS**
Benjamin J. Fuchs (SBN 320793)
ben@bjflegal.com
2323 Broadway
Oakland, CA 94612
Tel: (510) 542-9201

**NIDEL & NACE, P.L.L.C.**
Chris Nidel (*Pro Hac Vice Forthcoming*)
chris@nidellaw.com
April Strauss (SBN 163327)
april@nidellaw.com
One Church Street, Suite 802
Rockville, MD 20850
Tel: (202) 780-5153

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MACY MERRELL, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FLORIDA CRYSTALS CORP.,<br><br>Defendant. | Case No. 5:25-cv-02264-SVK<br><br>Hon. Susan van Keulen<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT FLORIDA CRYSTALS CORP.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Complaint Filed: March 5, 2025<br>Second Amended Complaint Filed: January 9, 2026 |

## TABLE OF CONTENTS

STATEMENT OF ISSUES TO BE DECIDED ..................................................................................... 3

I.    INTRODUCTION ................................................................................................................. 4

II.   FACTUAL BACKGROUND ................................................................................................ 8

III.  LEGAL STANDARD .......................................................................................................... 8

IV.   ARGUMENT ......................................................................................................................... 9

    A.    DEFENDANT AGAIN ARTIFICIALLY NARROWS PLAINTIFF'S WELL-PLED ALLEGATION THAT DEFENDANT'S BURN-HARVESTING PRACTICES CONTRIBUTED TO THE LABEL CLAIMS' DECEPTION OF HER AND OTHER REASONABLE CONSUMERS ........................................................... 9

    B.    PLAINTIFF PLAUSIBLY ALLEGES THAT DEFENDANT'S GLADES FARMS HARM THE PLANET, HARM THE SOIL, AND CONTRIBUTE TO CLIMATE CHANGE ..................................................... 12

    C.    PLAINTIFF'S ALLEGATIONS, AT MINIMUM, SATISFY THE LENIENT *WILLIAMS* REASONABLE CONSUMER STANDARD APPLICABLE AT THE MOTION TO DISMISS STAGE ................................. 17

    D.    PLAINTIFF HAS ADEQUATELY PLED HER COMMON LAW CLAIMS ..................................... 25

    E.    PLAINTIFF'S EQUITABLE CLAIMS SURVIVE BECAUSE PLAINTIFF HAS PLED SUFFICIENT FACTS SUPPORTING THAT SHE LACKS AN ADEQUATE REMEDY AT LAW ................................... 26

    F.    PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF ................................................. 27

    G.    SHOULD THE COURT GRANT DEFENDANT'S MOTION, PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND .................................................................................................................. 28

V.    CONCLUSION ................................................................................................................... 28

1

## TABLE OF AUTHORITIES

C<small>ASES</small>

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)----------------------------------------------------------------------------9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). -------------------------------------------------------------9

*Bell v. Publix Super Markets, Inc.*, 982 F.3d 468 (7th Cir. 2020). ------------------------------------- 18

*Beltran v. Avon Prods., Inc.*, No. SACV1202502CJCANX, 2012 WL 12303423 (C.D. Cal. Sept. 20, 2012) -----------------------------------------------------------------------------------------------------6, 22, 23

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336 (9th Cir.1996)-------------------------------------------------9

*Carmeli v. Razor USA, LLC*, No. 2:21-CV-07123-JVS-SK, 2022 WL 20273623, at *5 (C.D. Cal. Feb. 16, 2022) --------------------------------------------------------------------------------------------- 13

*Cooper v. Pickett*, 137 F.2d 616 (9th Cir. 1997). ----------------------------------------------------------9

*Herrera v. Estee Lauder Companies, Inc.*, No. SACV1201169CJCANX, 2012 WL 12507876, at *1 (C.D. Cal. Sept. 20, 2012). ------------------------------------------------------------------- 22, 23, 24

*In re S.C. Johnson & Son, Inc. Windex Non-Toxic Litig.*, No. 20-CV-03184-HSG, 2021 WL 3191733 (N.D. Cal. July 28, 2021) ------------------------------------------------------------------------- 18

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009)-------------------------------------------------9

*Kellman v. Whole Foods Mkt., Inc.*, 313 F. Supp. 3d 1031 (N.D. Cal. 2018)------------------------ 12

*Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496 (2003) ---------------------------------------- 18

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ----------------------------------------------- 17

*Morgan v. Apple Inc.*, 2018 WL 2234537, at *9 (N.D. Cal. May 16, 2018)------------------------- 13

*Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993) ---------------------------------------------------- 9, 14

*Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564 (9th Cir. 2017) ----------------------- 17

*Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212 (C.D. Cal. 2012) ---------------------------- 24

*Swartz v. Dave's Killer Bread, Inc.*, 2023 WL 11965055, at *4 (N.D. Cal. Jan. 9, 2023) --------- 13

*Williams v. Gerber Prods.*, 552 F.3d 934 (9th Cir. 2008). -------------------------------------- 9, 17

S<small>TATUTES</small>

Fed. R. Civ. P. 9(b) ----------------------------------------------------------------------------------- 9, 14

Fed. R. Civ. P. 12(b)(6) ------------------------------------------------------------------------------------8

16 C.F.R. § 260-----------------------------------------------------------------------------------------------18

### STATEMENT OF ISSUES TO BE DECIDED

1)      Whether Defendant has carried its burden of showing that this is the rare circumstance where it is *impossible* that reasonable consumers could be misled by Defendant's unsubstantiated general environmental benefit label claims.

2)      Whether Defendant has established that anything consumers would be reasonably expected to discern or infer from the viewing Defendant's unsubstantiated general environmental benefit label claims *in context* renders it impossible that reasonable consumers would be misled.

3)      Whether Defendant has established that Plaintiff's claims for equitable relief should be dismissed.

4)      Whether Defendant has established that Plaintiff is not entitled to injunctive relief despite Plaintiff's reasonable assertions that she lacks an adequate remedy at law due to her reasonable interpretation of Defendant's misleading product claims, which is not cabined by the narrow question of the purchased products' production practices.

5)      Whether Plaintiff should be granted leave to amend as to any dismissed claims.

3

## I.   **<u>INTRODUCTION</u>**

Defendant Florida Crystals Corp. ("Defendant" or "FCC") through its Motion to Dismiss again relies primarily on the misplaced assertion that Plaintiff Macy Merrell ("Plaintiff") cannot state a claim because the FCC sugar products Plaintiff purchased were grown in the small section of Defendant's South Florida cane fields where Defendant asserts it does not conduct the preharvest burns that studies show sicken—and can even kill—residents of the region. As Plaintiff alleged through her original and First Amended complaints[1] and now further clarifies through her Second Amended Complaint, whether the specific purchased Products were produced in a less-harmful manner than the unpurchased Products covered in this action is irrelevant to Plaintiff's interpretation of the Products' misleading marketing claims. Rather, the Product claims ("Challenged Representations") connote to Plaintiff, and reasonable consumers, that purchasing the Products over competing sugar products supports farming operations *writ large* that "Help Save the Planet," "help fight climate change," and "help build healthy soil." The fact is that they do not.

Defendant now accuses Plaintiff of unreasonably adopting a "hyper-specific interpretation of the Challenged Representations" (Motion at 2) while in the same breath baselessly claiming that reasonable consumers would only interpret the Challenged Representations in a significantly *more* specific fashion than does Plaintiff. While *some consumers may* interpret the Challenged

---

[1] Far from using her Second Amended Complaint to wholly recast her asserted interpretation of the Challenged Representations, as Defendant claims, Plaintiff simply clarified the contours of her interpretation. Indeed, Plaintiff through her prior complaint iterations alleged that the Challenged Representations conveyed meaning to her and other reasonable consumers that went far beyond the limited question of the specific purchased Product's production history. For example, Plaintiff alleged through her First Amended Complaint that the Challenged Representations deceive "environmentally conscious consumers" into believing that they are buying Products that "support a company that fights climate change . . . and otherwise cares for the natural planet," thus "inducing responsible consumers to pay money to support the very harms they reasonably believe they're combatting." *See* Compl. ¶ 23; *see also* FAC ¶ 23.

4

Representations in the more limited way Defendant proposes, this does not establish that that Plaintiff's interpretation is unreasonable—and that her allegations are implausible.

Indeed, three basic features of the Products and the Challenged Representations support that, at minimum, Plaintiff's interpretation is a reasonable one. First, the Challenged Representations span *all* Products, regardless of whether they were grown through organic or conventional methods, supporting that consumers would reasonably understand these claims apply Product-wide rather than through some implicit narrowing to the specific purchased Product. Second, two of the three Challenged Representations refer to FCC's "farms," plural—further supporting a reasonable interpretation that these claims do not, as Defendant necessarily infers through its core argument, refer only to the small organic farm within Defendant's larger EAA cane farming operations.[2] Third, nowhere on the Products' packaging does Defendant clarify that the Challenged Representations are limited to the narrow question of how one of its array of products is manufactured. These fundamental commonalities traversing the entire Product line, both organic and conventional support not only that reasonable consumers would interpret the Challenged Representations to apply to FCC's larger operations, *but that FCC itself intended to convey this through its labeling decisions.* Yet despite this, Defendant again invites the Court to invade the role of the factfinder and conclude that Defendant's narrow interpretation is the *only* reasonable interpretation of the Challenged Representations.

Defendant cannot show—as it must at this stage of litigation—that this is the rare circumstance where it is *impossible* that the Challenged Representations could have misled reasonable consumers into believing they were purchasing Products from a company whose farms

---

[2] As Plaintiff notes through her Second Amended Complaint, FCC's organic cane farm occupies only about 5 percent of Defendant's 190,000-acre EAA sugarcane farming operations. SAC ¶ 45, n. 30.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO.: 5:25-CV-02264-SVK

"Helped Save the Planet," helped "fight climate change," and helped "build healthy soils." California federal courts have affirmed that consumers may pursue false advertising claims for company-wide misrepresentations even if the product they purchased did not itself derive from the harmful practices that rendered those company-wide claims false. As the court in one such matter held:

> As consumers have grown more aware of the social, environmental, and political impact of their purchasing decisions, they have tended to look to more factors, including company-wide operations, to inform their consumption choices. Consumers receive this information from a variety of sources, but one of the most direct and important remains the company itself. Companies, realizing this, have tailored their marketing to such consumers. **It should not be unexpected then, that when companies make misrepresentations about their company-wide operations, they face potential liability in court to consumers who relied on those representations in purchasing their products.**

*Beltran v. Avon Prods., Inc.*, No. SACV1202502CJCANX, 2012 WL 12303423, at *2–3 (C.D. Cal. Sept. 20, 2012) (emphasis added). Plaintiff has thus pled adequate facts supporting that the Challenged Representations misled—and continue to mislead—her and other reasonable consumers.

Next, Defendant's contention that reasonable consumers would not interpret the Challenged Representations as Plaintiff alleges when viewed in context is unavailing. Even if one were to reverse the standard at this point in the litigation and analyze the facts in the light most favorable to *Defendant*, the purportedly qualifying front- and back-label statements convey that the products are farmed using regenerative practices; that regenerative farming "pulls carbon from the air and stores it in the soil"; that the products do not contain genetically modified ingredients; that FCC "build[s] local habitats for pollinators . . . and birds . . . to protect your foods"; that FCC's farming practices produce "[h]ealthier soil" without further elaboration; and that the subset of organic products within the eight total FCC products at issue are both "USDA Organic" and "Regenerative

6

Organic Certified." None of these certifications, projects, or claims of soil carbon retention neutralize the substantial impact Defendant's burn harvesting, water pollution, and historical role in freshwater diversion exact on the local air and water as well as on the broader atmosphere as climate change continues to advance. Further, they fail to provide the level of concrete, substantiating detail required to rescue the Challenged Representations from a finding that they qualify as the very sort of general environmental benefit claims the Federal Trade Commission has found inherently misleading as identified in its Green Guides. But more to the point, none of these non-challenged label elements and statements render it *impossible* that reasonable consumers would be deceived by the Challenged Representations—the high bar Defendant must satisfy to trigger the rare circumstance in which the Court would answer this fact-intensive question itself at the motion to dismiss stage.

The reality is as Plaintiff has alleged in detail throughout the Second Amended Complaint: Defendant, well aware of the profitability of appealing to consumers who increasingly consider the environmental impacts of their purchasing decisions, has positioned itself through its marketing "as the country's most environmentally conscious and climate-friendly sugar company." A key component of this campaign is Defendant's appeal to consumers through generalized claims of environmental benefits, placed prominently on the Products' green front labels. Plaintiff has adequately pled that she and other reasonable consumers interpret these general environmental claims to mean that Defendant's farms writ large help save the planet, fight climate change, and build healthy soil. And Plaintiff has also pled with sufficient detail that these claims are all deceptive and misleading to her and other reasonable consumers because Defendant's Glades operations release significant greenhouse gases and airborne toxins while polluting and diverting South Florida waters—consequences directly contrary to the broad label claims made.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO.: 5:25-CV-02264-SVK

Defendant's Motion fails in other regards. By alleging detailed facts describing FCC's role as one of the two largest agricultural landholders in the Everglades Agricultural Area and Defendant's role in both polluting and diverting the region's waters, Plaintiff through her Second Amended Complaint has sufficiently pled Defendant's impacts on the South Florida's water quality and aquatic ecosystems. Additionally, Plaintiff has pled adequate facts supporting her equitable claims under the UCL and CLRA because she lacks an adequate remedy at law. Further, Plaintiff has sufficiently alleged that she has Article III standing for request for injunctive relief in asserting her desire to purchase FCC's products again in the future without the specter of being deceived.

For these reasons, the Court should deny Defendant's Motion as to the components Plaintiff opposes. Alternatively, to the extent the Court grants the Motion in whole or in part as to the opposed arguments, the Court should do so with leave to amend.

## II.     FACTUAL BACKGROUND

Plaintiff purchased Defendant's Organic Raw Cane Sugar Product in Santa Cruz, Calif. on several occasions between approximately September 2021 and August 2024. SAC ¶ 35, subd. (b). In doing so, she relied on the Products' Challenged Representations for their promise that purchasing the Products would support a company whose operations helped "save the planet," helped "fight climate change," and helped "build healthy soils." SAC ¶ 35, subd. (c). Plaintiff subsequently learned that Defendant delivered none of these promised benefits due to its practices, described herein, which in fact harm the planet, contribute to climate change, and do not help build healthy soils. SAC, *passim*.

## III.     LEGAL STANDARD

In a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept all allegations as true and view them favorably to the plaintiffs, with dismissal only warranted upon a finding that no plausible claim exists. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d

336, 337-38 (9th Cir.1996); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Claims that "sound in fraud" are subject to a heightened pleading standard under Federal Rule of Civil Procedure 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citation omitted). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under this standard, allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (quotation omitted). That is, a plaintiff must identify "the who, what, when, where, and how" of the alleged conduct sounding in fraud. *Cooper v. Pickett*, 137 F.2d 616, 627 (9th Cir. 1997). However, whether a practice is deceptive is a factual issue inappropriate for dismissal. *Williams v. Gerber Prods.*, 552 F.3d 934, 938-39 (9th Cir. 2008).

## IV.    ARGUMENT

### a. Defendant Again Artificially Narrows Plaintiff's Well-Pled Allegation that Defendant's Burn-Harvesting Practices Contributed to the Label Claims' Deception of Her and Other Reasonable Consumers

Defendant once again attempts to reframe the portion of Plaintiff's actual case theory premised on Defendant's ongoing use of toxic burn-harvesting across the majority of its South Florida cane farms by asserting that "Plaintiff alleges no facts suggesting that the Product she purchased was produced with preharvest burning," arguing that "[t]his alone is fatal to her claims premised on the alleged use of preharvest burning."[3] Motion at 8-9. Within this narrowed

---

[3] While not central to Plaintiff's basis for alleging the Challenged Representations deceived her and other reasonable consumers, Defendant's assertion that none of the organic Products contain sugar sourced from burn-harvested cane fields should not be assumed to be true based solely on Defendant's Motion statements. While Plaintiff does not

9

misframing, Defendant argues that "Plaintiff cannot state a plausible claim for relief based on her allegations regarding Florida Crystals' alleged use of burn harvesting." Motion at 10.

Yet again, Defendant's argument is premised on a fundamental mischaracterization of Plaintiff's interpretation of the Challenged Representations. None of the Challenged Representations specify that they refer only to a specific plot of FCC's EAA cane fields—or limits the claim to organic or conventional—nor does any unchallenged text or other component of the Products' front or back labels convey this limitation to consumers. In fact, the Challenged Representations convey the opposite, referring to Defendant's "Farming" and "farms" writ large in identical phrasing across *all eight organic and conventional Products*.

Defendant points to nothing in the SAC where Plaintiff claims that her deception was limited to *the source of the specific Product purchased*. This is because Plaintiff's allegations of deception are not drawn so narrow and apply broadly to Defendant's conduct. Plaintiff reasonably interpreted Defendant's broad environmental label claims to mean what they plainly convey: that Defendant was "Farming to Help Save the Planet," using "farms" that "help fight climate change & build healthy soils." Plaintiff articulates her grounds for the Challenged Representations' deceptive effects throughout her Second Amended Complaint, noting, for example, that "Defendant has comprehensively branded Florida Crystals sugar products as the eco-friendly sugar option in the United States, intentionally appealing to the millions of American sugar consumers who seek to use their buying power to minimize environmental harm, including by slowing climate change." SAC ¶ 8. As Plaintiff further alleges, "[c]onsumers are being deceived" because "Defendant's harmful practice of burning sugarcane before harvest does not "Help Save the Planet," "help fight climate change," or help "build healthy soils"—but in fact contributes to the *opposite* effect as to

---

assert that this is false, Plaintiff notes that Defendant does not support its assertion with affidavits, third-party certification records, or other corroborating documentation.

10

all three of the Challenged Representations' claimed environmental benefits. SAC ¶¶ 9, 63-65 (noting that Defendant in using burn harvesting *chooses* to "emit substantial volumes of unnecessary greenhouse gases that contribute to climate change as well as toxic particulate matter (PM2.5), dioxins, carbon monoxide, ammonia, elemental carbon, and volatile organic compounds that fill the air of the Florida Glades region on a daily basis during the six-to-eight-month harvesting season, poisoning local residents" while also harming rather than improving soil quality).

As Plaintiff alleges, "Defendant has capitalized on the growing demand for products that consumers believe help—or do not worsen—climate change as well as localized environmental harm by building the entire Florida Crystals brand identity around its claimed environmentalism, doubling down twice in the last four years with label redesigns accompanied by press releases that falsely position Florida Crystals sugar products as a vehicle for environmentally conscious consumers to support a company that fights climate change (by ensuring a net-neutral or better greenhouse gas footprint) and otherwise cares for the natural planet." SAC ¶ 29. "Through this deception," Plaintiff's allegations continue, "Defendant undermines consumer trust, impede informed purchase decisions, and put health at risk—all the while inducing responsible consumers to pay money to support the very harms they reasonably believe they're combatting." *Id.* That is, Plaintiff and other consumers are fraudulently induced—based directly on statements made on the Products' labels—to buy the Products on the belief that their "purchase will support a company whose farming operations protect or otherwise benefit the environment, fight climate change, and improve soil quality when in fact the opposite is true." SAC ¶ 87.

*This*—not Defendant's narrowed recasting—is Plaintiff's basis for alleging deception and the violations of law that flow therefrom. *See* SAC ¶ 172 (alleging Defendant violated the UCL by deceiving members of the California Subclass into paying premiums—or at all—for Products

"misrepresented through the Challenged Representations as helping save the planet, fight climate change, and build healthy soil").

The Court should thus reject Defendant's attempt to reframe Plaintiff's alleged basis for deception and use this mischaracterization as the basis for dismissal. Plaintiff's purchase decision was not just a decision to purchase a specific product; it was to purchase it from a company on the basis of generalized, misleading claims across the entire line of sugar products regarding that company's environmental stewardship. This theory is plainly stated in the SAC and provides ample basis for denying dismissal, particularly at this stage of litigation.

**b. Plaintiff Plausibly Alleges that Defendant's Glades Farms Harm the Planet, Harm the Soil, and Contribute to Climate Change**

Plaintiff plausibly alleges facts that, taken as true as they must be at this stage, undermine the veracity of all three Challenged Representations.

i.   Plaintiff Has Adequately Pled—and Plausibly Alleged—Defendant's Water Impacts

First, Defendant hyperbolically contends that Plaintiff's claims premised on Defendant's water impacts amount to little more than "ill-disguised criticisms *of the entire sugar industry*" while again focusing on the irrelevant question of how those water impact connect with "the production of the specific USDA Organic product [Plaintiff] purchased." Motion at 10 (emphasis added). "claims premised on water pollution, Plaintiff alleges no facts tying her generalized criticisms of "Big Sugar" to Florida Crystals, much less the Product she purchased," and "utterly fails to connect any of those allegations to Florida Crystals' production practices, much less the practices used to produce the specific USDA Organic product she purchased." Motion at 11, 14.[4]

---

[4] Plaintiff notes out of an abundance of caution that to the extent Defendant's Motion arguments may be construed as attacking the "substantial similarity" among the purchased and unpurchased Products, Plaintiff has standing as to all Products. *See Kellman v. Whole Foods Mkt., Inc.*, 313 F. Supp. 3d 1031, 1053 (N.D. Cal. 2018) (noting that while courts have split on the question of whether actual purchase is required to establish standing, the "majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed

12

Not so. Florida's "Big Sugar" is not, as Defendant suggests, an ill-defined, amorphous term. *See* Motion at 10. Rather, as Plaintiff again notes in her SAC, "Big Sugar" is widely understood to refer to the dominant combination of Defendant and U.S. Sugar Corporation—i.e., the "second head of Florida's sugar lobby." *See* SAC ¶¶ 5, 44. The media sources Plaintiff cites reflect the same definition. *See, e.g.,* SAC ¶ 67, n. 52 (Tim Padgett, *'Not Even Close': Clean-Up of Everglades Water Polluted by Big Sugar Struggles to Keep Up*, WLRN PUBLIC MEDIA (Dec. 6, 2023) https://www.wlrn.org/environment/2023-12-06/everglades-restoration-sugar-farms-phosphorous-water (defining Big Sugar as "the politically powerful industry led by U.S. Sugar and Florida Crystals" and noting how "Florida's Big Sugar barons, such as Alfonso Fanjul, whose family owns Florida Crystals, have for decades resisted state and federal efforts to cede the land necessary for vital water storage and clean-up," stalling "overall Everglades restoration" efforts)).

Plaintiff also describes Defendant's alleged water impacts in sufficient detail in her SAC. For example, Plaintiff describes Florida Crystals' significant historic role (alongside U.S. Sugar) in introducing eutrophic fertilizers into local waterways, contributing to "deadly algal blooms" and "promoting the aggressive growth of aquatic species like cattails to the detriment of other species" while "depriving estuarial habitats such as Biscayne Bay of essential flushes of clean freshwater." SAC ¶ 67, n. 52. Plaintiff further alleges, with cited support, how FCC has successfully fought for years to secure and protect dominance of the region's stormwater treatment areas' ("STAs") storage capacity, robbing Lake Okeechobee of essential drainage and redirecting polluted lake runoff from its natural southbound flow and into eastbound and westbound rivers, harming those ecosystems.

class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar") (citation modified); *see also Carmeli v. Razor USA, LLC*, No. 2:21-CV-07123-JVS-SK, 2022 WL 20273623, at *5 (C.D. Cal. Feb. 16, 2022) (citing *Kellman* in holding that plaintiffs had standing as to substantially similar unpurchased products); *Morgan v. Apple Inc.,* 2018 WL 2234537, at *9 (N.D. Cal. May 16, 2018) (same, allowing claims for unpurchased products that were "substantially similar" to the ones purchased); *Swartz v. Dave's Killer Bread, Inc.*, 2023 WL 11965055, at *4 (N.D. Cal. Jan. 9, 2023) (products are "substantially similar" if same type, similar composition, and have same mislabeling).

13

SAC ¶ 68, n. 53, 54, 55 (reflecting, e.g., how Defendant's efforts contributed to only 10.5 percent of STA storage space going to Lake Okeechobee runoff in 2022).

Further, as to water diversion impacts, Plaintiff details—and supports with cites to news articles— how Defendant's sugar fields occupy close to *half* of the EAA's approximately 400,000 acres of sugarcane farms that occupy a critical geographic point where the "River of Grass" historically flowed south toward the Everglades. SAC ¶¶ 40-41, 57, 68-69.[5] Plaintiff further notes that Defendant is currently seeking to build a limestone rock mine in the region despite concerns that the project could "cripple future Everglades restoration projects." SAC ¶ 70.[6]

Plaintiff's SAC allegations concerning the impacts of Defendant's sugar-field presence and practices on the region's water quality, flow, and supply therefore "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). That is, they articulate in sufficient detail Defendant's alleged conduct that, through its harm to water quality and natural waterflow, help render the Challenged Representations misleading to Plaintiff and other reasonable consumers. *See Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (quotation omitted) (to satisfy Rule 9(b), fraud-related allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong").

---

[5] *Citing* Amy Green, *Billions of Gallons of Freshwater Are Dumped at Florida's Coasts. Environmentalists Want That Water in the Everglades*, INSIDE CLIMATE NEWS (June 18, 2024) https://insideclimatenews.org/news/18062024/everglades-wetlands-toxic-algae-pollution/ (detailing Big Sugar's dominant role in EAA's blockage of natural southward water flow through "River of Grass" into heart of surviving portion of Everglades along with correlated redirection of now-polluted water flow to Lake Okeechobee and outflow waterways to ocean).

[6] *Citing* Timothy O'Hara, *Palm Beach County approves sugar rock mine in Everglades despite Treasure Coast opposition*, TREASURE COAST NEWS (May 22, 2025), https://www.tcpalm.com/story/news/local/indian-river-lagoon/2025/05/22/palm-beach-county-commission-to-vote-on-florida-crystals-sugar-rock-mine-in-everglades/83771283007/).

14

i.      Plaintiff Plausibly Alleges that Defendant's Farming Operations Harm to the Planet

Next, Plaintiff through her SAC alleges detailed facts that, taken to be true, support that Defendant's farms, far from "Farming to Help Save the Planet," collectively *harm* the planet in multiple ways. These include through the emission of airborne toxins and greenhouse gases on regular basis during the burn season through its preharvest burns, by damaging the soil through these burns, and through its water impacts. For example, Plaintiff alleges in detail—and supports with reference to numerous scientific and medical studies—how Defendant's burn-harvesting practices release copious volumes of carbon dioxide, methane, nitrogen, volatile organic compounds, and a host of chemicals (including PM2.5) on a daily basis throughout the burn season, polluting the atmosphere and sickening residents of the Glades region. SAC ¶ 47.[7] Defendant does not dispute these assertions as to the misleading nature of the Challenged Statement "Farming to Help Save the Planet," sidestepping its own intentional deceit by contending that the claim "is non-actionable puffery" (addressed below). Motion at 21-22.

ii.      Plaintiff Plausibly Alleges that Defendant's Farming Operations Do Not Help Fight Climate Change

Plaintiff also pleads sufficient facts supporting that Defendant's EAA farming operations do not, in fact, help "fight climate change." Indeed, Plaintiff through her SAC goes beyond what is required to establish the Challenged Statement's falsity and cites extensive scientific studies supporting that Defendant's Glades sugar farming practices in fact *contribute* to climate change— noting, for example, that "studies support that "the most important reduction in greenhouse gas

---

[7] *Citing* Elena David & Violeta-Carolina Niculescu, *Volatile Organic Compounds (VOCs) as Environmental Pollutants: Occurrence and Mitigation Using Nanomaterials*, 18 INT. J. ENV'T. RES. PUBLIC HEALTH 13147 (2021), https://pmc.ncbi.nlm.nih.gov/articles/PMC8700805/.
21 Lulu Ramadan et al., *supra* n. 16; *see also* Violeta Mugica-Alvarez et al., *Sugarcane Burning Emissions: Characterization and Emission Factors*, 193 ATMOSPHERIC ENV'T 262-72 (2018), https://www.sciencedirect.com/science/article/abs/pii/S1352231018305995

15

emissions from sugarcane areas could be achieved by switching" from a burn-harvesting system to a green harvest system, as such a transition can, e.g., allow sugar growers to sequester more than *seven tons* of carbon dioxide equivalent per hectare every year." SAC ¶ 52 (*citing, e.g.*, Eduardo Barretto de Figueiredo et al., *Greenhouse Gas Emission Associated with Sugar Production in Southern Brazil*, 5 CARBON BALANCE MGMT. (2010), https://cbmjournal.biomedcentral.com/articles/10.1186/1750-0680-5-3). Defendant does not confront Plaintiff's assertions that Defendant's farming practices do not help fight climate change, instead focusing primarily on the contention that this Challenged Statement does not promise "a *net reduction* in greenhouse gases" and then by arguing that "Plaintiff cannot base claims on statements the label does not make." Motion at 17. Plaintiff addresses below whether a jury may find Plaintiff's interpretation of this Challenged Statement reasonable.

        iii.     <u>Plaintiff Plausibly Alleges that Defendant's Farming Operations Do Not Help Build Healthy Soils</u>

Finally, Plaintiff also alleges detailed facts supporting that Defendant's EAA operations do not as a whole help "build healthy soil." Plaintiff supports her allegations that FCC's ongoing use of burn harvesting in fact *harms* soil health by citing studies showing, for example, that "burned sugarcane fields subsequently release approximately 37 percent more soil bound carbon dioxide than non-burned (green-harvested) fields—due in large part to the lack of residual organic matter and the destabilization of soil in these intensively burned fields." SAC ¶ 51.[8] Defendant does not

---

[8] *Citing* Mara Regina Moitinho et al., *Effects of Burned and Unburned Sugarcane Harvesting Systems on Soil CO2 Emission and Soil Physical, Chemical, and Microbiological Attributes*, 196 CATENA 104902 (2021), https://www.sciencedirect.com/science/article/abs/pii/S0341816220304537 (finding faster soil carbon emission rates (2.63 µmol m⁻² s⁻¹ versus 1.92 µmol m⁻² s⁻¹) and shorter oil-carbon half-lives (1,033.95 days versus 1,572.82 days) in burned areas than in unburned areas); *see also* Rose Luiza Moraes Tavares et al., *Soil Management of Sugarcane Fields Affecting CO2 Fluxes*, 73 SCIENTIA AGRICOLA 543-51 (2016), https://www.researchgate.net/publication/309407458_Soil_management_of_sugarcane_fields_affecting_CO2_fluxes; Alan Rodrigo Panosso et al., *Spatial and Temporal Variability of Soil CO2 Emission in a Sugarcane Area under Green and Slash-and-Burn Managements*, 105 SOIL AND TILLA

16

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO.: 5:25-CV-02264-SVK

attempt to address Plaintiff's factual assertions as to the harmful impact of preharvest burns on soil health, instead again focusing exclusively on the organic Products. *See* Motion at 6. Defendant once again self-imposes its own artificial narrowing of Plaintiff's allegations of deception, focusing on FCC's small minority of organic farmland to note that "any production practice used under the NOP "must maintain or improve the natural resources of the operation, including soil and water quality," and that "the NOP regulates the types of substances that organic producers may use and requires organic producers to manage nutrients and soil amendment systems to "maintain or improve soil organic matter content in a manner that does not contribute to contamination of crops, soil, or water." Motion at 6-7 (*citing* 7 C.F.R. §§ 205.200, 205.203(d)). None of this undermines Plaintiff's well-pled allegations that Defendant's farming practices generally harm rather than help build healthy soil—and to the extent they might build healthy soil, this would present a factual dispute that cannot be decided at the motion to dismiss stage. *See, e.g., Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (Rule 12(b)(6) review limited to the four corners of the complaint, with allegations taken as true and construed in plaintiff's favor).

Plaintiff has thus pled—and supported with substantial citations to reliable sources— sufficient facts addressing the factual shortcomings of all three Challenged Representations.

   c. **Plaintiff's Allegations, at Minimum, Satisfy the Lenient *Williams* Reasonable Consumer Standard Applicable at the Motion to Dismiss Stage**

   i. <u>It is not impossible that a reasonable consumer would adopt Plaintiff's interpretations of the Challenged Representations.</u>

Generally, "the question of whether a business practice is deceptive is a question of fact that is appropriate for resolution on a motion to dismiss *only in "rare" circumstances.*" *See Williams v. Gerber Products Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008) (emphasis added); *see also Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 566 (9th Cir. 2017) (whether a business practice is deceptive is generally "not appropriate for decision on a motion to dismiss") (*citing Williams*).

17

That is, "[h]ow reasonable consumers actually understand defendants' . . . labels is a question of fact that cannot be resolved on the pleadings" even if it is sometimes amenable to resolution on summary judgment." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 483 (7th Cir. 2020). Such "rare" circumstances occur when "the advertisement itself [makes] it *impossible* for the plaintiff to prove that a reasonable consumer [is] likely to be deceived." *Williams*, 552 F.3d at 939.

All three of Plaintiff's statutory claims are governed by the "reasonable consumer" test. *Williams*, 552 F.3d at 938 (citations omitted). Under the reasonable consumer test, a plaintiff must show that "members of the public are likely to be deceived." *Id.* To make such a showing, a plaintiff must establish that it is "probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Proctor & Gamble Co.*, 105 Cal. App. 4th 496, 508, 129 Cal.Rptr.2d 486 (2003) (noting that this requires "more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner").

Thus, under the deferential *Williams* standard at the pleadings challenge stage of litigation, Plaintiff need only establish that her interpretations of the Challenged Representations are *plausible. See In re S.C. Johnson & Son, Inc. Windex Non-Toxic Litig.*, No. 20-CV-03184-HSG, 2021 WL 3191733, at *9 (N.D. Cal. July 28, 2021) ("At this stage, the Court need not decide which party offers the better, more reasonable or more persuasive definition"). Plaintiff's interpretations of the Challenged Representations, as alleged in the SAC and reiterated herein, satisfy this modest requirement, as Plaintiff through her SAC has supplied "sufficient support . . . to support an inference that a reasonable consumer would adopt" her interpretation of Defendant's label claims. *See id.*

In its Motion, Defendant dismisses Plaintiff's interpretation of the Challenged Statement "farms help fight climate change" as having conveyed Defendant's promise of "a net reduction in the greenhouse gases that cause climate change," arguing that "Plaintiff cannot base claims on statements the label does not make." Motion at 17. Again, Defendant self-imposes a narrowing that limits the Court's focus and ignores the critical fact that this Challenged Statement constitutes an unqualified general environmental benefit claim—claims that promise the precise sort of "far-reaching environmental benefits" the FTC Green Guides warn against using due to their propensity to confuse or mislead consumers. *See* 16 C.F.R. §§ 260, 260.4 (stating that "[b]ecause it is highly unlikely that marketers can substantiate all reasonable interpretations of these claims, marketers should not make unqualified general environmental benefit claims). The distance between the Parties' asserted interpretations of the Challenged Statement "farms help fight climate change" only underscores that the claim amounts to a general environmental benefit claim that is "difficult to interpret and likely convey[s] a wide range of meanings." *See* 16 C.F.R. § 260; *see also* Bonta, Rob, et al., *Green Guides Review*, Matter No. P954501, at 16 (April 24, 2023), https://oag.ca.gov/system/files/attachments/pressdocs/Comments%20to%20FTC%20re%20Green%20Guides%204.24.23.pdf (reflecting observation by coalition of attorneys general from California and 14 other states and the District of Columbia in urging the FTC to update Green Guides to adopt heightened substantiation standards for general environmental benefit claims that such claims are particularly vulnerable to *multiple reasonable interpretations*, and reasonable consumers may assume that such a claim applies to the entire production and supply chain of a product, *or to a company's entire operation*).

As Plaintiff alleges in the SAC, the Challenged Statement "help fight climate change" is analogous to the phrase "Eco-Friendly," which the Green Guides state "is deceptive" because "it is highly unlikely that [a] marketer can substantiate" such broad environmental benefit claims. SAC

19

¶¶ 76-77 (*citing* 16 C.F.R. § 260.4). Finally, even if, *arguendo*, Defendant were ultimately capable of substantiating that its farms do, in fact, "help fight climate change," it would have to demonstrate that this benefit is more than negligible. *Id*. (marketers "should not make unqualified environmental benefit claims" and "should not imply that any specific benefit is significant when it is, in fact, negligible"). However, that is not an issue here as Defendant does not provide any substantiation of the Challenged Statement "help fight climate change" on its Product labels.

The Ninth Circuit has held that "deceptive advertising claims should take into account all the information available to consumers and the context in which" information relating to the subject claim "is provided and used," with "availability" defined as the text of product labels as well as "contextual inferences from the product itself and its packaging." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 883 (9th Cir. 2021). In *Moore*, the Court pointed to three "contextual inferences" in holding that a reasonable consumer would not interpret a claim that a honey product was composed entirely from the Manuka flower since such would be impossible. By contrast, nothing in Defendant's Product labeling would alter a consumer's reasonable belief that "help fight climate change" means Defendant's farms help combat climate change. Plaintiff is unclear as to how, as Defendant asserts, Product label statements and marks connoting that Defendant's organic farms "help fight climate change" through being "Regenerative Organic Certified®, Non-GMO Project Verified, and USDA Organic" might somehow disabuse a reasonable consumer of average sophistication of the impression that the Challenged Statement promises a broader benefit or even clear up the ambiguity created by this front-label general environmental benefit claim.

Plaintiff's interpretations of the other two Challenged Representations likewise qualify as reasonable. First, as Plaintiff alleges, "Farming to Help Save the Planet" amounts to a textbook general environmental benefit claim, analogous to "Eco-Friendly." *See* SAC ¶¶ 76-77, *citing* 16

C.F.R. § 260.4. Nothing on the Products' packaging or otherwise readily apparent to any reasonable consumer provides a concrete definition of this claim that might render Plaintiff's interpretation impossible, unlike the "contextual inferences" the *Moore* Court concluded should have put the plaintiff on notice that their interpretation of the label claim was "impossible." *Moore v. Trader Joe's Co.*, 4 F.4th at 883.

Next, Plaintiff's asserted interpretation of the Challenged Statement "build healthy soil" is reasonable—but more to the point for purposes of this Motion, *it is certainly not impossible or even implausible. See Williams*, 552 F.3d at 939. As with the honey product's label claim in *Moore,* "build healthy soil" is ambiguous and subject to multiple meanings. Also like the facts in *Moore* is that the Products contain non-Challenged Representations and marks ("Regenerative Organic Certified®," "Non-GMO Project Verified," and "USDA Organic") that *may*, as Defendant contends, speak further to the meaning of "build healthy soil." Motion at 16. However, the similarities end there. Unlike the Ninth Circuit's finding that the plaintiff's interpretation of the honey label claim was rendered "impossible" by "contextual inferences," no such dispositive "inferences" exist here. Rather, "build healthy soils" is a much broader claim than the "100% New Zealand Manuka Honey" and "New Zealand Manuka Honey" label claims in *Moore*, which facially appeared to present consumers with, at most, three possible interpretations—all well-defined. 4 F.4th 874, 882 (noting that absent the "clarifying inferences," "100% could be a claim that the product was 100% Manuka honey, that its contents were 100% derived from the Manuka flower, or even that 100% of the honey was from New Zealand"). No such limitations exist as to "help build healthy soil" on account of its breadth and vagueness, nor do any of the Product statements render Plaintiff's interpretation impossible.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO.: 5:25-CV-02264-SVK

Finally, to Defendant's assertions that the Challenged Representations "help fight climate change" and "build healthy soils" are both true, with their meanings clarified and substantiated by the non-challenged label statements and marks communicating the Products' organic and GMO certifications, this does not eliminate the possibility that a jury would find them to be technically true while also misleading, with Plaintiff's interpretations found reasonable as a result. *See Williams*, 552 F.3d at 938 (affirming that true statements can mislead); *see also Kasky v. Nike, Inc.*, 27 Cal.4th 939, 951 (2002) (The California consumer protection laws "prohibit not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public").

  ii.    <u>California federal courts have affirmed that well-pled FAL, CLRA, and UCL allegations premised on companywide misrepresentations may survive pleadings challenges even where the purchased product was not derived from a company's harmful practices.</u>

Further supporting that Defendant cannot carry its imposing burden of demonstrating that it is *impossible* that reasonable consumers would be misled by the Challenged Representations is the fact that courts have held that well-pled allegations of deception based on companywide misrepresentations may withstanding a motion to dismiss even where the purchased product is not sourced from the practice that renders the company's marketing claims false or misleading.

In the companion cases *Beltran v. Avon Prods., Inc.* and *Herrera v. Estee Lauder Companies, Inc.*, consumers alleged they were misled by cosmetic manufacturers' claims that they did not test their products on animals when in reality the defendants conducted animal testing with products sold in foreign markets, including in countries where they were required to do by law. *Beltran v. Avon Prods., Inc.*, No. SACV1202502CJCANX, 2012 WL 12303423, at *2–3 (C.D. Cal. Sept. 20, 2012); *Herrera v. Estee Lauder Companies, Inc.*, No. SACV1201169CJCANX, 2012 WL 12507876, at *1 (C.D. Cal. Sept. 20, 2012). In each of those cases, the courts found that the

22

plaintiffs had Article III standing to pursue claims (including FAL, CRLA, and UCL claims) grounded in the respective defendants' "false representations and omissions about its overseas operations," which allegedly induced the plaintiffs to purchase products in the United States they otherwise would not have purchased. *Beltran*, 2012 WL 12303423, at *4.

Each of these cases emphasized the following:

> That the misrepresentations were not specifically related to the products she purchased, but instead the company's wider operations, does not negate the fact that Ms. Beltran was allegedly induced into purchasing something she otherwise would not have purchased. Consumers typically base their purchasing decisions on the price and quality of a product. As consumers have grown more aware of the social, environmental, and political impact of their purchasing decisions, they have tended to look to more factors, including company-wide operations, to inform their consumption choices. Consumers receive this information from a variety of sources, but one of the most direct and important remains the company itself. Companies, realizing this, have tailored their marketing to such consumers. It should not be unexpected then, that when companies make misrepresentations about their company-wide operations, they face potential liability in court to consumers who relied on those representations in purchasing their products.

*Beltran,* 2012 WL 12303423, at *2–3; *Herrera v. Estee Lauder Companies, Inc.*, 2012 WL 12507876, at *3.

The allegations and analyses of the facts in *Beltran* and *Herrera* are directly applicable here, where Plaintiff alleges Defendant deceived her and other consumers through front-label general environmental benefit claims that misrepresented Defendant's company-wide environmental impacts—and the broad benefits of supporting a company that is helping "Save the Planet," "fight climate change," and "build healthy soils" that are untethered to the specific products purchased. And Plaintiff has not, as the plaintiffs in *Herrera* and *Beltran*, inadequately pled key components of her causes of action by failing to identify (a) "what the advertising materials specifically state" or (b) "point[s] . . . to particular advertisements or promotional materials that she was personally exposed to." *See, e.g.*, *Beltran*, 2012 WL 12303423, at *4. (noting that the plaintiff there had "not

23

even [pled] whether the advertisements were broadcast on television, on the radio, or in print ads); *see also Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1217 (C.D. Cal. 2012) (consumer plaintiff had standing under Article III, the UCL, the FAL, and the CLRA where she alleged that "she was injured because [the defendant corporation] made false representations and omissions about its operations, which induced her to buy a non-defective product she otherwise would not have purchased") (emphasis added).

Rather, Plaintiff alleges that she relied on the three identified Challenged Representations, described verbatim throughout the Second Amended Complaint and captured in included images—when purchasing the Products. SAC ¶ 23.

For these reasons, Plaintiff's interpretations of all three Challenged Representations are, at minimum, not impossible—and thus they satisfy the modest *Williams* reasonable consumer standard at this stage of litigation in that they are not "impossible" interpretations assuming the Court analyzes them according to Plaintiff's theory of deception rather than Defendant's self-serving narrowing of Plaintiff's own allegations. And for the reasons stated *supra*, Plaintiff has alleged sufficient facts to support that each of the Challenged Representations as reasonably interpreted were deceptive or misleading due to their overstatement of the general environmental benefits they each promised.

iii.    <u>Far from non-actionable puffery, the Challenged Statement "Farming to Help Save the Planet" is a textbook example of a presumptively misleading general environmental claim.</u>

Defendant's argument that the Challenged Statement "Farming to Help Save the Planet" is mere "puffery" fails, as this Challenged Statement fits squarely within the Green Guides' definition of inherently misleading general environmental benefit claims.

24

"A statement is considered puffery if the claim is extremely unlikely to induce consumer reliance. Ultimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim." *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008) (*citing Cook, Perkiss, & Liehe v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 245 (9th Cir. 1990)). However, even statements constituting puffery on their own cannot be dismissed when they contribute to the deceptive context as a whole. *See Williams*, 552 F.3d at 939 n. 3.

Here, the Challenged Statement "Farming to Help Save the Planet," while certainly broad, qualifies as just the sort of promise of "far-reaching environmental benefits" the FTC Green Guides warn against using due to their propensity to confuse or mislead consumers. *See* 16 C.F.R. §§ 260, 260.4 (stating that "[b]ecause it is highly unlikely that marketers can substantiate all reasonable interpretations of these claims, marketers should not make unqualified general environmental benefit claims). Indeed, the Challenged Statement "Farming to Help Save the Planet" is analogous to the phrase "Eco-Friendly," which the Green Guides state "is deceptive" because "it is highly unlikely that [a] marketer can substantiate" such broad environmental benefit claims. SAC ¶¶ 76-77 (*citing* 16 C.F.R. § 260.4). The claim thus does not meet the definition of puffery, as the FTC has effectively opined that it is *the opposite* of "extremely unlikely to induce consumer reliance." *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008)

### d.    Plaintiff Has Adequately Pled Her Common Law Claims

The Court should deny Defendant's motion to dismiss Plaintiff's breach of warranty and unjust enrichment claims because, as discussed above, Plaintiff has adequately pled that Defendant's Challenged Statement misled and continue to mislead Plaintiff and other reasonable consumers.

25

As to breach of warranty, Plaintiff has alleged that she purchased the Products in reasonable reliance on Defendant's Challenged Representations, which misrepresented the Products as derived from farms that "Help Save the Planet," "fight climate change," and "build healthy soils." Plaintiff thus alleged in sufficient detail the "terms of the warranty," her "reasonable reliance thereon," the breach of those terms, and how this breach proximately caused Plaintiff's injury. *See Kearney v. Hyundai Motor America*, No. SACV09–1298–JST, 2010 WL 8251077, at *7 (C.D. Cal. Dec. 17, 2010); *see also Azoulai v. BMW of N. Am. LLC*, 2017 WL 1354781, at *7 (N.D. Cal. Apr. 13, 2017) (breach of express warranty claims require showing that claims at issue are likely to deceive reasonable consumers).

Further, Plaintiff has adequately pled unjust enrichment on the same basis she adequately alleged her statutory causes of action, as discussed in detail above. *See Sanders v. Apple Inc.*, 672 F.Supp. 2d 978, 989 (N.D. Cal. 2009) (an unjust enrichment claim depends on the viability of the plaintiff's other claims).

e.  **Plaintiff's Equitable Claims Survive because Plaintiff has Pled Sufficient Facts Supporting that She Lacks an Adequate Remedy at Law**

Plaintiff's equitable claims survive at this stage in the litigation because Plaintiff has sufficiently alleged that she lacks an adequate remedy at law. As Plaintiff details in her SAC, she possesses an intent to purchase the Products in the future but lacks the ability to ascertain whether these label claims remain false, deceptive, or misleading. SAC ¶ 29. Thus, even if Plaintiff were to secure money damages, this would be inadequate to remedy the harm since she would remain susceptible to future injury through a future purchase of Products that carry misleading or deceptive label claims. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018)) (recognizing the risk of injury to consumers through future purchases).

**f.    Plaintiff Has Standing to Seek Injunctive Relief**

Next, Plaintiff has Article III standing to seek injunctive relief. Defendant's argument should be rejected because it misconstrues the interplay between controlling Ninth Circuit precedent and the SAC's detailed allegations.

As Defendant correctly notes, under *Davidson v. Kimberly-Clark Corp.*, previously deceived consumers have standing to seek injunctive relief if they face an "actual or imminent" threat of future harm. 873 F.3d 1103, 1115 (9th Cir. 2017). This standard applies in situations such as that before the Court where consumers plausibly allege they cannot rely on the accuracy of the product labeling for future purchases. Specifically, Plaintiff in the SAC asserts that she intends to repurchase the Products but currently cannot trust that the label claims are not deceptive or misleading. SAC ¶ 35, subd. (a).

Since Plaintiff would again purchase the Products were they accurately labeled (SAC ¶ 35, subd. (a)) but cannot independently verify whether Defendant continues to engage in the subject environmentally harmful practices that render the Challenged Representations deceptive and misleading, she is at risk of either avoiding Products she would otherwise purchase if Defendant's farms actually helped save the planet, helped fight climate change, or helped build healthy soils. Plaintiff's well-pled inability to make an informed decision on these bases is the precise type of imminent and concrete harm that injunctive relief is meant to address. *See, e.g.*, *Gagetta v. Walmart, Inc.*, 646 F. Supp. 3d 1164, 1177 (N.D. Cal. 2022) (plaintiffs allegedly prevented from purchasing products in future due to unreliable labels had standing).

Plaintiff therefore has Article III standing to pursue injunctive relief since she has adequately alleged that she faces an "actual or imminent" threat of future harm.

**g. Should the Court Grant Defendant's Motion, Plaintiff Should be Granted Leave to Amend**

Lastly, to the extent the Court grants Defendant's Motion in whole or in part, the Court should do so with leave to amend. The Ninth Circuit applies a policy of "extreme liberality" when considering whether to grant leave to amend. *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990). Dismissal with prejudice and without leave to amend is not appropriate unless the complaint could not be saved by amendment. *See Eminence Cap., LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003)**.** Plaintiff should thus be afforded the opportunity to cure any identified pleading defects should the Court grant Defendant's Motion in any part.

## V.    **CONCLUSION**

Plaintiff respectfully requests that the Court deny Defendant's Motion in its entirety. To the extent the Court grants the Motion in whole or in part, Plaintiff requests leave to amend.

Dated: February 6, 2026                Respectfully submitted,

                                 */s/ Ben Fuchs*
                                 Benjamin J. Fuchs, Esq.
                                 **LAW OFFICE OF BENJAMIN J. FUCHS**

                                 Chris Nidel, Esq. (*Pro Hac Vice Forthcoming*)
                                 April Strauss, Esq.
                                 **NIDEL & NACE, P.L.L.C.**

                                 *Attorneys for Plaintiff*

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE NO.: 5:25-CV-02264-SVK