UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MACY MERRELL, | Case No.  25-cv-02264-SVK |
| Plaintiff, | |
| v. | **ORDER ON MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| FLORIDA CRYSTALS CORPORATION, | Re: Dkt. No. 53 |
| Defendant. | |

In this putative class action, Plaintiff Macy Merrell ("Plaintiff") alleges that Defendant Florida Crystals Corporation ("Florida Crystals" or "Defendant") deceptively labels and markets certain of its sugar products as eco-friendly even though Defendant engages in farming practices that Plaintiff claims harm the environment.  *See* Dkt. 52 ("Second Amended Complaint" or "SAC").  Plaintiff sues on behalf of a putative class of nationwide purchasers and a putative subclass of California purchasers of the relevant products.  *Id.* ¶ 106.  All Parties have consented to the jurisdiction of a magistrate judge.  Dkt. 10, 17.

Now before the Court is Florida Crystals' motion to dismiss the SAC.  Dkt. 53.  This motion is suitable for determination without a hearing.[1]  Civ. L.R. 7-1(b).  For the reasons discussed below, the motion to dismiss the SAC is **GRANTED-IN-PART and DENIED-IN-PART**.

I.    **BACKGROUND**

A.    **Factual Background**

This summary of background facts is based on the allegations of the SAC.  Defendant Florida Crystals manufactures, markets, and sells the product lines at issue in this case:

---

[1] The Court is aware that Defendant requested oral argument and strives to grant such requests. Unfortunately, as a matter of judicial efficiency in managing this case and because it is the second round of challenges to the pleading, the request is not accommodated in this instance.

United States District Court
Northern District of California

(1) Florida Crystals Regenerative Organic Certified Sugars and (2) Specialty Raw Cane Sugars. SAC ¶¶ 21, 39; *see also id.* ¶ 21 n. 1 (identifying specific products at issue).

Plaintiff Macy Merrell is domiciled in Santa Cruz, California, which is within this judicial District. SAC ¶ 35a. She alleges that on several occasions between September 2021 and August 2024, she purchased Florida Crystals Regenerative Organic Raw Cane Sugar Product (two-pound bag size) from a Safeway store in Santa Cruz. SAC ¶ 35b. The SAC alleges that "[i]n making her purchases, Plaintiff Merrell read the 'Farming to Help Save the Planet' and 'our farms help fight climate change & build healthy soil' representations on the Products' label, leading Plaintiff Merrell to believe that Florida Crystals' farms help save the planet, fight climate change, and build healthy soil – and that purchasing the Products over competing sugar products would further these efforts and outcomes." SAC ¶¶ 35c. The SAC defines the "Challenged Representations" as those two representations "together with green-dominated packaging." SAC ¶ 23. The SAC alleges that "Defendant further reinforces its prominent front-label Product label claims through similar representations throughout the Products' packaging as well as on its website and social media channels—all of which likewise strive to sell the Products using general environmental claims referencing Florida Crystals' *companywide practices and attributes* rather [than] characteristics that apply to certain Products but not to others." SAC ¶¶ 24 (emphasis in original); *see also* SAC ¶¶ 25-26.

### B.    Procedural Background

Plaintiff filed this lawsuit on March 5, 2025. Dkt. 1. Defendant Florida Crystals (along with Fanjul Corporation, which has since been dismissed) filed a motion to dismiss the original complaint. Dkt. 25. Rather than opposing the motion to dismiss, Plaintiff filed a First Amended Complaint. Dkt. 37 ("FAC").

Defendant moved to dismiss the FAC. Dkt. 41. On December 8, 2025, the Court issued an order granting-in-part and denying-in-part the motion to dismiss the FAC. Dkt. 51. Among other things, the Court found that the FAC did not sufficiently describe the alleged deception regarding "company-wide" practices that Plaintiff argued in opposition to the motion to dismiss the FAC. *Id.* at 8. The Court gave Plaintiff leave to file a Second Amended Complaint "to clarify

2

her theory regarding Florida Crystals' allegedly false and misleading representations." *Id.* at 1.

Plaintiff timely filed the SAC.  Dkt. 52.  The SAC asserts causes of action for: (1) violation of California False Advertising Law, Cal. Bus. & Prof. C. § 17500, *et seq.* ("FAL claim"); (2) violation of California Consumers Legal Remedies Act, Civil Code § 1750 *et seq.* ("CLRA claim"); (3) violation of California Unfair Competition Law, Business & Professions Code § 17200 *et seq.* ("UCL claim"); (4) breach of warranty; and (5) unjust enrichment.  *Id.*

## II.    LEGAL STANDARDS

### A.    Rule 8

Federal Rule of Civil Procedure 8 requires that the complaint include a short and plain statement of the grounds for the court's jurisdiction, a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for the relief sought.  Fed. R. Civ. P. 8(a).  "Each allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1). The statement need only give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).   Issues arising under Rule 12(b)(6) and Rule 8 are often addressed simultaneously.

### B.    Rule 9(b)

Claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). A plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  To satisfy this heightened pleading standard, the allegations must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged "so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted).  Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotations marks omitted).  In other words, "[a]verments of fraud must be accompanied

3

by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks and citation omitted). The plaintiff must also set forth "what is false or misleading about a statement, and why it is false." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal quotation marks and citation omitted).

### C.    Rule 12(b)(6)

Rule 12(b)(6) authorizes a district court to dismiss a complaint if it fails to state a claim upon which relief can be granted.  In ruling on a motion to dismiss, the court may consider only "the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).  In deciding whether the plaintiff has stated a claim, the court must assume the plaintiff's allegations are true and draw all inferences in the plaintiff's favor.  *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment.  *Lucas v. Dept' of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

### III.    REQUEST FOR JUDICIAL NOTICE

Defendant filed a request for judicial notice ("RJN") of product labels and a press release regarding the same in connection with its earlier motion to dismiss the FAC.  *See* Dkt. 42.  The Court deferred a ruling on the RJN in its order on that motion to dismiss.  Dkt. 51 at 7 n.4.  Plaintiff has not opposed the RJN.  *See* Dkt. 46, 54.  "Courts addressing motions to dismiss product-labeling claims routinely take judicial notice of images of the product packaging."

United States District Court
Northern District of California

4

*Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1087 (N.D. Cal. 2017) (citation omitted). Moreover, the press release that is included in the RJN appears on Defendant's website, and websites and their contents may be proper subjects for judicial notice. *See Arroyo v. PA Hotel Holdings, LLC*, No. 21-cv-00343-SVK, 2021 WL 4145970, at *2 (N.D. Cal. Apr. 23, 2021). Accordingly, Defendant's RJN at Dkt. 42 is **GRANTED** and the Court takes judicial notice of Exhibits A through P to the Declaration of Tyler A. Young (Dkt. 41-1).

## IV.    ANALYSIS

In the present motion, Defendant seeks dismissal of all causes of action in the SAC on the grounds that Plaintiff has failed to allege the necessary elements of each cause of action. *See generally* Dkt. 53.

### A.    Arguments directed to all claims

Defendant begins its motion to dismiss with arguments as to why "Plaintiff's claims fail across the board." Dkt. 53 at 8.  In evaluating these overarching arguments, some context is helpful.  The SAC defines the "Products" at issue as "several varieties and sizes of sugar products sold under two lines of Defendant's Florida Crystals brand: (1) Florida Crystals Regenerative Organic Certified Sugars and (2) Specialty Raw Cane Sugars." SAC ¶ 21; *id.* n.1 (identifying Products more specifically).  According to the SAC, the labeling, packaging, and marketing of the Products "lead reasonable consumers, like Plaintiff, to believe that the Products will—through supporting Florida Crystals' farming operations—benefit the Earth and soil and help fight climate change." SAC ¶ 91.  The SAC further alleges that Plaintiff reasonably relied on the Challenged Representations because she made her purchase decisions at least in part based on her reasonable belief that her purchase of the Products would support large-scale farming that helps protect and otherwise benefit the Earth's natural environments, help fight climate change, and/or help create healthy soils based on Defendant's Challenged Representations.  SAC ¶ 93.

As Defendant explains, Plaintiff's claims against the Challenged Statements are "premised on two alleged environmental issues:  (1) harm to air quality from preharvest burning of sugarcane, and (2) pollution or other harm to local water sources." Dkt. 53 at 8.  The Court will now separately address the adequacy of Plaintiff's pleading as to each of these alleged

environmental impacts.

### 1.    Alleged impacts of pre-harvest burning on air and soil

The explicit premise of the SAC is that the practice of burning in connection with the harvesting of sugarcane is worse for the environment than the alternative practice of green harvesting. *See, e.g.,* SAC ¶¶ 1-2, 9-11.  Defendant argues that Plaintiff's claims fail to the extent they are based on preharvest burning because "the production practices Plaintiff complains about *were not used* to produce the single USDA Organic product she purchased."  Dkt. 53 at 1.  The SAC alleges that Plaintiff purchased one product (which the SAC defines as "the 'Purchased Products'"):  "the Florida Crystals Regenerative Organic Raw Cane Sugar Product (two-pound bag size)."  SAC ¶ 35.b.  Defendant contends that the sole product Plaintiff purchased is certified USDA Organic, and that certification prohibits the use of preharvest burning.  *Id.* at 8-10.  Plaintiff does not dispute this contention.  *See generally* Dkt. 54 at 8-12.  Defendant also offers evidence that the label of the product Plaintiff purchased did not contain the Challenged Statements until after she began purchasing the product.  Dkt. 53 at 5-6.

Plaintiff responds by pointing out that the claims in the SAC are broader than claims concerning the particular product she purchased.  *See* Dkt. 54 at 8-12.  According to the allegations of the SAC, the Challenged Statements and other marketing practices "strive to sell the Products using general environmental claims referencing Florida Crystals' *companywide practices and attributes* rather [than] characteristics that apply to certain Products but not to others."  SAC ¶ 24 (emphasis in original).  Moreover, and notably, Defendant expressly disavows any challenge to Plaintiff's standing to sue for non-purchased products. Dkt. 53 at 14 ("Florida Crystals *does not* challenge Plaintiff's standing – except her standing to pursue injunctive relief." (emphasis in original)).

Consequently, to the extent Plaintiff's claims are premised on preharvest burning, they are not subject to dismissal just because that practice was not used in the production of the single product Plaintiff purchased.  The SAC concerns additional products and plausibly alleges that the Challenged Representations were not confined to the attributes of a particular product but instead conveyed information about Defendant's company-wide practices.

United States District Court
Northern District of California

### 2.    Alleged impacts of sugar production on water

The SAC also alleges that Defendant's operations "contribute" to degradation of water quantity and quality in the region in two ways:  (1) "Defendant['s] release of fertilizer through the field runoff in Florida Crystals sugarcane farming operations contributes to 'dead zones' in adjacent waterways, including Lake Okeechobee;" and (2) "Defendant['s] outsize presence in the [Everglades Agricultural Area ('EAA')] significantly contributes to the EAA's blockage of southward water flow, starving the Everglades of clean water critical to the health of its ecosystems."  SAC ¶ 13; *see also* SAC ¶¶ 66-71.  Defendant argues that Plaintiff's claims concerning water pollution should be dismissed because Plaintiff fails to connect any of the alleged "water issues" to Defendant's sugarcane production practices, "much less the production of the specific USDA Organic product she purchased."  Dkt. 52 at 10-12; Dkt. 55 at 3.

The Court rejects Defendant's suggestion that Plaintiff must tie her claims of water issues to the particular product she purchased.  As discussed in the preceding section, Plaintiff's claims extend beyond that particular product, and Defendant does not challenge her standing to sue on unpurchased products.

Defendant also argues that Plaintiff's allegations of water issue use improper "group pleading." *See* Dkt. 53 at 11.  Defendant is correct that the SAC contain numerous allegations concerning water issues caused by the industry-wide practices of "Big Sugar." *See, e.g.,* SAC ¶¶ 4, 5, 40-45, 50, 61, 66, 67, 69.  Defendant is also correct that "generalized allegations about industry-wide problems" have been held in some cases to be insufficient to notify the defendant of the particular misconduct constituting fraud. *See, e.g., Dwyer v. Allbirds,* 598 F. Supp. 3d 137, 152 (S.D.N.Y. 2022) (holding that claims that defendant's marketing scheme that involved depictions of "happy" sheep in "pastoral settings" rested on "empty welfare policies that do little to stop animal suffering" failed to plausibly allege a materially misleading statement because the plaintiff "pleads nothing related to the wool used by Defendant" but instead "seems to take issue with the [wool] industry as a whole"); *Tarzian v. Kraft Heinz Foods Co.*, 2019 WL 5064732, at *4 (N.D. Ill. Oct. 9, 2019) (holding that plaintiff cannot rely solely on sector-wide allegations without "draw[ing] a connection between the common industry practice and the actual

practice used by [the company]"); *Podpeskar v. Dannon Co., Inc.,* No. 16-cv-8478 (KBF), 2017 WL 6001845, at *1 n.1 (S.D.N.Y. Dec. 3, 2017) ("very little of plaintiff's complaint is specific to Dannon and its alleged practices; rather her complaint broadly describes animal husbandry practices and the use of GMOS nationwide"); *Gordon v. Target Corp.*, 2022 WL 836773, at *10 (S.D.N.Y. Mar. 18, 2022) ("none of [the cited misrepresentations] is specific to Defendant or the Product" and instead "Plaintiff seems to take issue with the [] industry as a whole").

Here, however, the SAC alleges that Defendant's own operation "impacts" or "contributes" to the deleterious impact on water quantity and quality in the Everglades Agricultural Area. SAC ¶ 13 (quoted above), ¶ 27 (referring to Defendant's "operation-wide impact on local water systems"), ¶ 39 (referring to "the water impacts" of Defendant's farms in the EAA). Moreover, Plaintiff's allegations against "Big Sugar" are coupled with allegations that Defendant is one of only two companies that comprise "Big Sugar" (SAC ¶ 5), as well as allegations concerning the significant size of Defendant's operations in the EAA (SAC ¶ 66). Defendant's prominent role in "Big Sugar" differentiates this case from others that have found impermissible group pleading, which often "involve greater numbers of defendants and include almost no differentiating allegations." *EcoHub, LLC v. Recology Inc.*, No. 22-cv-09181-TSH, 2023 WL 6725632, at *6 (N.D. Cal. Oct. 11, 2023) (citations omitted). "[S]o-called 'group pleading' is not fatal as long as the complaint gives defendants fair notice of the claims against them." *Id.* (citations omitted).

The SAC satisfies that notice standard. The SAC expresses concerns about the sugar industry at large, but there are sufficient allegations specific to the impact of Defendant's practices on water to survive a motion to dismiss. *See Waggener Van Meter v. Mondelez Int'l, Inc.*, No. 24-CV-7368, 2025 WL 3678444, at *8–9 (N.D. Ill. Dec. 18, 2025)

\*\*\*

For the foregoing reasons, the Court **DENIES** the motion to dismiss insofar as it is based on arguments as to why the SAC should be dismissed "across the board" (*see* Dkt. 53 at 8-12).

United States District Court
Northern District of California

**B.      Additional arguments directed to statutory claims**

Defendant advances two additional reasons why Plaintiff's CLRA, UCL, and FAL claims should be dismissed:  (1) reasonable consumers would not interpret the Challenged Representations in the way Plaintiff alleges; and (2) one of the Challenged Statements is non-actionable puffery.  Dkt. 53 at 12-22.

**1.      The reasonable consumer standard**

The Parties agree that Plaintiff's statutory claims are assessed under the "reasonable consumer" standard.  Dkt. 53 at 12; Dkt. 54 at 17-18; *see also Williams v. Gerber Products Co.,* 552 F.3d 934, 938 (9th Cir. 2008); *Della v. Colgate-Palmolive Co.*, No. 23-cv-4086-JCS, 2024 WL 457798, at *18 (N.D. Cal. Feb. 6, 2024).  Under this standard, plaintiffs must show that members of the public are "likely to be deceived." *Williams,* 552 F.3d at 938 (citation omitted).  The standard requires "more than a mere possibility" that a challenged label or advertisement "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (citations omitted).  Rather, the reasonable consumer standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* at 965.

Whether a reasonable consumer would be deceived **"**will usually be a question of fact not appropriate for decision" on a motion to dismiss.  *Williams*, 552 F.3d at 938 (citations omitted); *see, e.g., Tapia v. Coca-Cola Co.*, No. 22-cv-01362-HSG, 2023 WL 2621346, at *4 (N.D. Cal. Mar. 23, 2023) ("At this stage, the Court cannot say as a matter of law ... that a reasonable consumer would not be deceived by the product label." (citation omitted)).  However, it may be appropriate to decide this question on the pleadings under limited circumstances, such as "where plaintiff's challenge to a statement on a label is easily dispelled because of other, similarly prominent or proximate statements" or where the court finds "that a modicum of common sense would reveal the truth behind advertising." *Della*, 2024 WL 457798, at *19 (citations omitted).

Here, Defendant argues that Plaintiff's statutory claims should be dismissed because a reasonable consumer (1) would not understand the Challenged Statements to be claims about

United States District Court
Northern District of California

United States District Court
Northern District of California

Defendant's companywide operations but would instead understand them to pertain to the product on which they appear; and (2) even if consumers understood the Challenged Statements to address companywide operations, they would not would interpret the product label in the way Plaintiff contends she was deceived. Dkt. 53 at 12-20. Defendant argues that the Challenged Statements "Farming to Help Save the Planet" and "farms help fight climate change & build healthy soil" say "*nothing* about preharvest burning or water quality issues" and are at most "ambiguous." *Id.* at 2 (emphasis in original). Defendant contends that under these circumstances, a reasonable consumer would look to other statements on the product labels that Defendant argues provide "context" to the Challenged Statements. *Id.*

Plaintiff responds by arguing that "courts have held that well-pled allegations of deception based on companywide misrepresentations may withstanding (sic) a motion to dismiss even where the purchased product is not sourced from the practice that renders the company's marketing claims false or misleading," citing the companion cases of *Beltran v. Avon Prods., Inc.*, No. SACV1202502CJCANX, 2012 WL 12303423, at *2–3 (C.D. Cal. Sep. 20, 2012), and *Herrera v. Estee Lauder Companies, Inc.,* No. SACV1201169CJCANX, 2012 WL 12507876, at *1 (C.D. Cal. Sep. 20, 2012). Dkt. 54 at 22-23. Plaintiff characterizes these "Cosmetic Cases" as holding that the plaintiffs plausibly alleged they were induced to purchase products based on misrepresentations concerning the defendant's company-wide operations. Plaintiffs also argue that "other statements on the product labels" that Defendant argues provide context to the Challenged Labels do not "render Plaintiff's interpretation impossible." Dkt. 54 at 21.

The SAC alleges that the farming practice of preharvest burning harms air and soil quality and that fertilizer runoff and large-scale farming operations impair water quality and quantity. *See, e.g.,* SAC ¶¶ 9- 13. Defendant tries to distinguish the Cosmetic Cases on the basis that the statements challenged in those cases were "explicitly about companywide practices." Dkt. 55 at 7. The same could be said about the Challenged Statements in this case, which concern "farming" and "farms" and are not limited to a particular product. Moreover, Defendant has not shown that, as a matter of law, no reasonable consumer would understand Defendant's statements "Farming to Help Save the Planet" and "farms help fight climate change & build healthy soil" along with

10

United States District Court
Northern District of California

Defendant's "green-dominated packaging" to mean that Defendant did not engage in the allegedly deleterious production practices.  The cases cited by Defendant are distinguishable in that the product statements challenged in those cases were much narrower and specific than those challenged here.  For example, some of the cases involved labels representing that a product met a particular standard, and courts held that a reasonable consumer would not understand those representations to mean that the products had attributes not required under that standard.  *See, e.g., West v. Sambazon, Inc.*, 750 F. Supp. 3d 356, 372 (S.D.N.Y. 2024) (holding that plaintiff had not alleged facts identifying how a label stating that an acai juice product was Fair for Life (FFL) certified plausibly represented to reasonable consumers a guarantee that the juice was produced without child labor because the FFL standard did not require that no child labor is used in the production of the product; applying New York law); *Dwyer,* 598 F. Supp. 3d at 144, 149-50 (holding that plaintiff had not alleged facts identifying how a label containing calculations of environment impact of wool shoes under specific methodologies was misleading where "Plaintiff does not allege that the calculations Defendant provides are wrong or that Defendant falsely describes the way it undertakes those calculations" but instead simply "believe[s] that Defendant should use a different method of measuring the Product's carbon footprint; applying New York law).  In other cases cited by Defendant, a logical link between the statement on the label and the alleged understanding of a reasonable consumer was missing.  *See, e.g., Zahora v. Orgain*, No. 21 C 705, 2021 WL 5140504, at *4 (N.D. Ill. Nov. 4, 2021) (holding that reasonable consumer would not read the statement "vanilla bean flavor" on the label of a vanilla shake product as a guarantee that most of the flavor would come from vanilla beans and none from artificial flavors).

Here, by contrast, Plaintiff alleges that Defendant labels its products with claims of "Farming to Help Save the Planet" and "farms help fight climate change & build healthy soils" and uses green-dominated packaging, whereas Defendant allegedly actually employs farming practices that harm the air, soil and water.  *See, e.g.,* SAC ¶¶ 23-27.  Defendant argues that the Challenged Statements are at most ambiguous, which would lead a reasonable consumer to consult other information on the label including front-label certification information on the one Product Plaintiff purchased and explanations on the back label that explain "how Florida Crystals

11

'fight[s] climate change' and 'build[s] healthy soil' through regenerative agriculture, including by providing habitats for pollinators and birds." Dkt. 53 at 2. Defendant fails to show how these other statements would change a reasonable consumer's alleged understanding of the environmental benefits of Defendant's products. At this pleading stage, Plaintiff's allegations suffice. The facts of this case "do not amount to the rare situation in which granting a motion to dismiss is appropriate" under the reasonable consumer standard. *Williams*, 552 F.3d at 939.

### 2.    Puffery

Defendant also argues for dismissal of the statutory claims to the extent they are based on the claim "Farming to Help Save the Planet" on the grounds that the statement is non-actionable puffery. Dkt. 53 at 12, 21-22. "Puffery is 'exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely.'" *In re Clorox*, 894 F. Supp. 2d at 1233 (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997)). "While product superiority claims that are vague or highly subjective often amount to nonactionable puffery . . . 'misdescriptions of specific or absolute characteristics of a product are actionable.'" *Southland Sod Farms*, 108 F.3d at 1145 (quoting *Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv.*, 911 F.2d 242, 246 (9th Cir. 1990)); *see also Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 998 (N.D. Cal. 2007) ("Factual representations ... are actionable." (citation omitted)). "Courts analyzing whether a statement constitutes puffery examine whether the statements are general assertions that say nothing about the specific characteristics or components of the products or whether they are specific factual assertions." *Rojas v. Gen. Mills, Inc.*, No. 12-CV-05099-WHO, 2014 WL 1248017, at *5 (N.D. Cal. Mar. 26, 2014). "[W]hether an alleged misrepresentation 'is a statement of fact' or is instead 'mere puffery' is a legal question that may be resolved on a Rule 12(b)(6) motion." *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008).

Defendant argues that the challenged statement "Farming to Help Save the Planet" is "just the sort of 'generalized, vague and unspecific assertion[]' that no reasonable consumer would rely upon." Dkt. 53 at 21 (quoting *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 343 F.3d 1000, 1015 (9th Cir. 2003)). Defendant suggests that the "Help Save" statement is puffery because it is

12

United States District Court
Northern District of California

not "quantifiable" and uses "aspirational" language.  Dkt. 53 at 21.

However, "[t]he touchstone of the puffery analysis is not whether a particular representation is quantifiable, but the likelihood that reasonable consumers would rely on that representation. Quantifiability is one factor, but there are others which may affect consumers' reaction and reliance." *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 1007 (N.D. Cal. 2018).  Moreover, courts may not "pluck[]" a statement regarding a product's environmental friendliness "out of [its] context to determine whether the words, taken *per se*, are sufficiently 'vague' as to constitute puffery" but must instead "examine the entire statement and its circumstances to determine if it is actionable." *In re Volkswagen "Clean Diesel" Marketing*, No. 3:15-md-02672-CRB, 2017 WL 66281, at *17 (N.D. Cal. Jan. 4, 2017).  Another court in this District has explained that "[t]o the extent [the defendant] contends that our cases delineate a category of 'aspirational statements' that are immune from liability under the false advertising laws, the Court rejects the argument."  *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 862 (N.D. Cal. 2015).  Instead, even if the statement at issue uses qualifiers like "aims to," "wants to," or "should", "a court must still determine whether it is extremely unlikely to induce consumer reliance." *Id.* (internal quotation marks and citations omitted).

The examples of statements found to be "aspirational" and thus non-actionable puffery in out-of-district cases cited by Defendant expressed the seller's beliefs and commitments.  Dkt. 53 at 21-22 (citing *Myers v. Starbucks Corp.*, No. EDCV 20-00335-CJC(SHKx), 2020 WL 13302437, at *4 (C.D. Cal. 2020) ("supports sustainably sourced cocoa through Cocoa Horizons"); *Sanchez v. Walmart*, 733 F. Supp. 3d 653, 662, 672-73 (N.D. Ill. 2024) ("committed to sourcing sustainable seafood")).  By contrast, Defendant's "Help Save" statement is not merely aspirational.  The SAC plausibly alleges that the way Defendant labels and markets the Products, including not only use of the phrase "Farming to Help Save the Planet" but also the statement "farms help fight climate change & build healthy soils" and green-dominated packaging, gives the impression not merely that Defendant *supports* the use of farming practices that benefit the environment but actually *uses* those practices, whereas Defendant in fact uses allegedly

13

United States District Court
Northern District of California

environmentally harmful farming practices. *See, e.g.,* SAC ¶¶ 23-27. The indication in the FTC Green Guides that "unqualified general environmental benefit claims … likely convey that the product … has specific and far-reaching environmental benefits and may convey that the item … has no negative environmental impact," while not decisive, "undermine[s]" an argument that a statement that a product is environmentally friendly can be dismissed as mere puffery. *White v. Kroger Co.,* No. 21-cv-08004-RS, 2022 WL 888657, at *2 (N.D. Cal. Mar. 25, 2022) (quoting 16 C.F.R. § 260.1 *et seq.* (alteration in original)).

At this juncture, the statement "Farming to Help Save the Planet," when read in context, cannot be determined to be puffery as a matter of law.

\* \* \*

For the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss the FAL, CLRA, and UCL claims.

### C.    Additional arguments directed to common law claims

Defendant argues that Plaintiff's common law claims for breach of warranty and unjust enrichment fail because she has not alleged any actionable misrepresentations by Defendant. Dkt. 52 at 22-23. Specifically, Defendant argues that the claim for breach of express warranty fails because Defendant "did not promise that the Product would not be produced with preharvest burns or contribute to water issues." *Id.* at 22. Similarly, Defendant argues that the unjust enrichment claim fails because the predicate claim that Defendant engaged in misleading advertising fails. *Id.* at 22-23.

For the reasons discussed above, Plaintiff has alleged actionable misrepresentations. Accordingly, Defendant's motion to dismiss the breach of warranty and unjust enrichment claims is **DENIED.**

### D.    Additional arguments directed to equitable claims

Plaintiff's UCL claim seeks both equitable relief for past harm in the form of restitution and/or disgorgement (*see* SAC ¶¶ 154, 164, 172) and equitable relief for future harm in the form of an injunction (*see* SAC ¶¶ 153, 163, 171). The relief Plaintiff seeks in her CLRA claim includes injunctive relief. SAC ¶ 141. Defendant seeks dismissal of Plaintiff's UCL claim and

14

her CLRA claim for injunctive relief on the grounds that Plaintiff cannot seek equitable relief under these theories without first establishing the lack of an adequate remedy at law. Dkt. 53 at 23; Dkt. 55 at 14-15. Defendant contends that "Plaintiff's claims should be dismissed because her allegations focus on *economic injuries* that could be remedied by the legal remedy of damages if her claims were plausible. Dkt. 53 at 23 (citing *Hubbard v. Google,* No. 19-cv-7016-SVK, 2025 WL 82211, at \*14 (N.D. Cal. Jan. 13, 2025)) (emphasis in original).

The Ninth Circuit has held that "a federal court must apply traditional equitable principles before awarding restitution under the UCL and CLRA." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841 (9th Cir. 2020). One "basic doctrine of equity jurisprudence [is] that courts of equity should not act when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) (internal quotation marks, alteration, and citations omitted). Accordingly, *Sonner* held that a federal plaintiff must "establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA." *Sonner*, 971 F.3d at 844.

"Courts applying *Sonner* have distinguished between equitable relief for past harm, including restitution and disgorgement, and injunctive relief for future harm." *Ary v. Target Corp.*, No. 22-CV-02625-HSG, 2023 WL 2622142, at \*4–5 (N.D. Cal. Mar. 23, 2023) (citing *Price v. Wells Fargo & Co.*, No. 22-CV-03128-JSC, 2022 WL 17821590, at \*1–2 (N.D. Cal. Dec. 6, 2022) (dismissing request for restitution for lack of equitable jurisdiction and maintaining injunctive relief claim); *IntegrityMessageBoards.com v. Facebook, Inc.*, No. 18-CV-05286-PJH, 2020 WL 6544411, at \*6–7 (N.D. Cal. Nov. 6, 2020) (dismissing requests for restitution and disgorgement but finding plaintiff lacked an adequate legal remedy for future harm); *Roper v. Big Heart Pet Brands, Inc.*, 510 F. Supp. 3d 903, 917–18 (E.D. Cal. 2020) (finding "plaintiff may pursue her equitable claims for injunctive relief to the extent they are premised on alleged future harm")); *see also Mobile Emergency Hous. Corp. v. HP, Inc.*, No. 20-CV-09157-SVK, 2021 WL 9867952, at \*10 (N.D. Cal. Oct. 15, 2021).

The UCL claim in the SAC explains that the equitable relief Plaintiff seeks in the form of restitution/disgorgement is based on the price and/or premium Plaintiff and other class members

United States District Court
Northern District of California

paid for the Products at issue. *See* SAC ¶¶ 154, 164, 172. These allegations of harm focus on economic injuries already suffered. The legal remedy of damages should serve as an adequate form of retrospective relief for such harm, and Plaintiffs seek damages to remedy their harm under other causes of action (*see, e.g.,* SAC ¶ 142, 187). *See Hubbard v. Google LLC*, No. 19-CV-07016-SVK, 2024 WL 3302066, at *4 (N.D. Cal. July 1, 2024) ("damages serve as sufficient legal remedy to adequately compensate for past loss of money or loss in value" (citing *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 908 (N.D. Cal. 2021)). Plaintiff has not pleaded facts showing that she lacks an adequate remedy at law in the form of damages for past harm. *See Hubbard,* 2024 WL 3302066, at *4. Plaintiff's opposition to the motion to dismiss does not attempt to defend the sufficiency of her retrospective claim for disgorgement or restitution and instead focuses on her request for future injunctive relief. *See* Dkt. 54 at 26. Accordingly, Plaintiff has not pleaded a plausible claim that she is entitled to restitution or disgorgement under the UCL claim.

By contrast, to the extent Plaintiff seeks injunctive relief, Plaintiff's allegations are sufficient to suggest she does not have an adequate remedy at law for future harm. Plaintiff alleges that she wants to purchase the Products but cannot make informed decisions about whether to purchase them as long as Defendant continues its current labeling practices. *See, e.g.,* SAC ¶ 35g. Thus, the Court finds that "at this stage of the litigation there is an ongoing, prospective nature to plaintiff's allegations given her contention that she and other future purchasers will continue to be misled.... sufficient to suggest a likelihood of future harm amenable to injunctive relief." *Ary*, 2023 WL 2622142, at *5 (quoting *Roper*, 510 F. Supp. 3d at 918).

Thus, Defendant's motion to dismiss Plaintiff's requests for restitution and disgorgement under the UCL claim is **GRANTED**, and Defendant's motion to dismiss Plaintiff's claims for injunctive relief on the grounds that Plaintiff has failed to plead that she has an inadequate remedy at law is **DENIED.**

### E.    Standing to seek injunctive relief

Defendant argues that if any of Plaintiff's claims survive, her request for injunctive relief must be dismissed because she lacks Article III standing to seek this remedy. Dkt. 53 at 24-25.

Specifically, Defendant argues that there is no threat of future injury. *Id.* According to Defendant, this case does not fall into either of the "two limited situations where 'a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false'": (1) where the consumer plausibly alleges that she "would like to" buy a product again but cannot "rely on the product's advertising or labeling" without a corrective injunction, or (2) where the consumer plausibly "might purchase the product in the future" because "she may reasonably, but incorrectly, assume the product was improved." *Id.* at 24 (quoting *Davidson v. Kimberley-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018)).

Defendant attempts to distinguish this case from those in which plaintiffs have been found to have standing to seek injunctive relief in connection with products whose "descriptions [] cannot be verified merely by looking at the label" because she now knows that "USDA Organic sugar products are not produced using preharvest burning or methods that harm water quality." Dkt. 53 at 25 (citing cases). But the SAC's allegations regarding Plaintiff's desire to purchase Defendant's products in the future are not limited to the USDA Organic sugar product she purchased in the past. The SAC alleges that "Plaintiff Merrell continues to see the Products available for purchase, continues to desire to buy sugar products whose purchase is truly beneficial to the environment, soil, and the fight against climate change, and thus would consider purchasing the Products again in the future if she could be sure the Products delivered their advertised benefits." SAC ¶ 35g; *see also id.* ¶ 36 (alleging that "Plaintiff is an average consumer who is not sophisticated in cane-sugar farming, harvesting, and production—nor does she have the ability to analyze the environmental impacts of Florida Crystals' on-the-ground farming operations going forward as they relate to the Challenged Representations" and she "has no way to determine whether Defendant's label claims are in fact true by merely viewing the Products' labels"). As explained above, the SAC defines "Products" as "several varieties and sizes of sugar products sold under two lines of Defendant's Florida Crystals brand" (*id.* ¶ 21), as distinct from single product

17

that Plaintiff has purchased in the past (*id.* ¶ 35b).[2]

Under the circumstances of this case, the allegations concerning Plaintiff's desire to purchase Defendant's Products in the future plausibly suggest that Plaintiff faces an actual threat of future harm absent injunctive relief. *See, e.g., Gagetta v. Walmart, Inc.,* 646 F. Supp. 3d 1164, 1177 (N.D. Cal. 2022) (holding that plaintiffs had standing to seek injunctive relief where they alleged a desire to purchase the products from the defendant in the future but cannot do so in an informed matter because they cannot rely on the labels going forward); *Johnson-Jack v. Health-Ade LLC*, 587 F. Supp. 3d 957, 976 (N.D. Cal. 2022) (same). If Defendant's labels on the Products continue to contain the Challenged Statements, Plaintiff will have no way of knowing whether Defendant has changed its farming practices because that quality is neither apparent from the label of the Products nor widely understood. *See, e.g., Davidson*, 889 F.3d at 967 (plaintiff had no way of knowing whether wipes were flushable, as labeled). In this respect, this case is distinguishable from others cited by Defendant. Dkt. 53 at 25; *see Shanks v. Jarrow Formulas, Inc.*, No. LA CV 18-09437, 2019 WL 7905745, at *5 (C.D. Cal. Dec. 27, 2019) (holding that plaintiff did not have standing to seek injunctive relief because "[n]ow that Plaintiff is aware that coconut oil is not the healthiest fat there is, he can in the future simply look at the label on Defendant's coconut oil, see that it is still in fact made of the singular ingredient that makes it allegedly unhealthy - coconut oil - and put it back" or "look at the back of the label and easily determine whether the product still contains 14 grams of fat and 13 grams of saturated fat per serving before purchasing the product"); *Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 906 (N.D. Cal. 2021) (finding no standing to seek injunctive relief because "Plaintiff knows that he can determine the Products' dosages by consulting the back labels"); *Rahman v. Mott's LLP*, No. 13-CV-03482-SI, 2018 WL 4585024, at *3 (N.D. Cal. Sep. 25, 2018) (finding no standing to seek injunctive relief because plaintiff "is able to rely on the packaging now that he understands the 'No Sugar Added' label").

---

[2] Defendant does not challenge Plaintiff's ability to allege intent to purchase "Products" other than the single product she has purchased in the past. *See generally Kellman v. Whole Foods Market, Inc.*, 313 F. Supp. 3d 1031, 1054-55 (N.D. Cal. 2018) (holding that plaintiff had standing to bring claims related to unpurchased products that were substantially similar to the products she bought).

Accordingly, Defendant's motion to dismiss Plaintiff's claims for injunctive relief on the grounds that Plaintiff lacks standing is **DENIED.**

### F.    Punitive damages

Defendant seeks dismissal of Plaintiff's claim for punitive damages on her FAL, warranty and unjust enrichment claims.  Dkt. 53 at 25 (citing SAC ¶¶ 126, 288, 195).  Plaintiff does not dispute Defendant's contention that punitive damages are not available on those claims. *See generally* Dkt. 54.  Accordingly, Plaintiff's requests for punitive damages are **DISMISSED.**

### G.    Leave to amend

Plaintiff argues that if the Court grants any part of Defendant's motion to dismiss the SAC, the Court should give Plaintiff leave to amend.  Dkt. 54 at 28.  This is now the <u>third</u> motion to dismiss filed by Defendant.  *See* Dkt. 25 (motion to dismiss original complaint); Dkt. 41 (motion to dismiss FAC); Dkt. 53 (motion to dismiss SAC).  As to those areas where the Court grants Defendant's motion to dismiss the SAC, Defendant made the same arguments in its motions to dismiss the previous versions of the Complaint.  *See, e.g.,* Dkt. 25 at 22-23 and Dkt. 41 at 22-23 (arguments in previous motions to dismiss that Plaintiff failed to establish inadequate remedy at law); Dkt. 25 at 25 and Dkt. 41 at 25 (arguments in previous motions to dismiss that Plaintiff cannot recover punitive damages on FAL, breach of warranty, or unjust enrichment claims).  In its order on Defendant's motion to dismiss the FAC, the Court cautioned Plaintiff that in preparing her SAC she should "consider the other arguments made" in Defendant's motion to dismiss the FAC.  Dkt. 51 at 8.  Plaintiff has not shown in her opposition to the present motion to dismiss that the defects identified in this Order are curable by amendment, and her repeated amendments suggest that granting her further leave to amend would be futile.  Accordingly, the Court's dismissal as to certain matters in the SAC is **WITHOUT LEAVE TO AMEND.**

## V.    CONCLUSION AND DISPOSITION

For the foregoing reasons, the Court **ORDERS** as follows:

1. Plaintiff's requests for restitution and disgorgement under the UCL claim and her requests for punitive damages under her FAL, breach of warranty, and unjust enrichment claims are **DISMISSED WITHOUT LEAVE TO AMEND.**

19

United States District Court
Northern District of California

2. Defendant's motion to dismiss the SAC is otherwise **DENIED.**

3. Defendant's answer to the SAC is due by **May 14, 2026.**

4. A Case Management Conference is set for **June 9, 2026 at 9:30 a.m.**, with a Joint Case Management Statement due on **June 2, 2026.**

   **SO ORDERED.**

Dated: April 30, 2026

_____

SUSAN VAN KEULEN
United States Magistrate Judge

United States District Court
Northern District of California

20